[Civ. No. 56319. Second Dist., Div. Four. Mar. 24, 1980.]

AETNA CASUALTY AND SURETY COMPANY,
Plaintiff and Respondent, v.
SAFECO INSURANCE COMPANY, Defendant and Appellant.

COUNSEL

L. E. Schweiner and Richard G. Flanagan for Defendant and Appellant.

Cummins, White, Robinson & Robinson and James O. White for Plaintiff and Respondent.

OPINION

**WONG, J.***—A declaratory relief action was brought by plaintiff to establish liability among three insurance carriers for a shooting accident

*Assigned by the Chairperson of the Judicial Council.

which occurred inside a vehicle. At the time of the accident, the automobile in question was in the process of being sold by Frank Davis to Ralph Helm. Aetna Casualty and Surety Company provided liability insurance on the automobile to its insured, Ralph Helm. Allstate Insurance Company provided liability insurance on the automobile to its insured, Frank Davis. Safeco Insurance Company provided homeowners insurance to Ralph Helm.

Following the accident, Glenn Clark instituted a personal injury action entitled *"Clark* v. *Helm, et al."* Settlement of that lawsuit was effected by payment of $9,000 to Glenn Clark. The insurance carriers contributing to the settlement reserved their rights to reimbursement from each other, pending resolution of the within declaratory relief action. The trial court found that the homeowners policy, issued by Safeco, provided the only coverage for the accident.

The declaratory relief action was tried on stipulated facts, of which the following is a summary:

On June 27, 1975, Kris Helm (son of insured Ralph Helm), Mark Singer, and Glenn Clark, three teen-age boys, drove from Los Angeles to Lancaster for the purpose of target shooting. Kris Helm drove the 1967 Ford Galaxy convertible automobile which his father was then buying. Mark Singer was seated in the front passenger seat, and Glenn Clark was in the rear. Six weapons were taken on the trip, including three rifles. Some of the weapons were in the trunk and some were in the passenger compartment of the car.

When the boys arrived at the target practice site in Lancaster, Glenn Clark's Remington 30.06-700 rifle, which had been loaded by Mark Singer, was resting between the two front seats, with its butt against the transmission tunnel and its barrel pointing toward the back seat. The car was driven off the travel portion of the street a distance of 600 to 700 feet, the automobile stopped, and the engine shut off.

The vehicle had been stopped from one to five minutes prior to the shooting incident. There was no intention to move the car again before beginning target practice. After the car was stopped, the boys began loading their guns. No car doors had been opened and no one had yet left the vehicle. Kris Helm, still seated behind the steering wheel, reached over to the Remington 30.06 and pulled back the bolt for the

purpose of chambering a round. Before completion of this procedure, the gun accidentally discharged, striking Glenn Clark.

Appellant contends that the accident in question arose out of the use of the automobile and was thus, by virtue of the terms of the policies in question, both covered by the automobile policies and excluded from the homeowners policy. ▮ As we will explain hereinafter, we agree with the trial judge that the accident arose out of the use of the gun, not the automobile, and the Safeco homeowners policy provided exclusive coverage of the incident.

The automobile policies in this case provide coverage for injury or damage "arising out of the...use of the owned automobile." The homeowners policy excludes "bodily injury or property damage arising out of the...use, loading or unloading of...any motor vehicle owned or operated by...the insured." The question presented here is whether the accident arose out of the use of the motor vehicle in question. Numerous cases in California and other jurisdictions have discussed this problem and defined the phrase, "arose out of the use." ▮ It is well established that an automobile need not be the proximate cause of an injury in order for automobile liability coverage to apply within the meaning of that phrase.

"The California cases uniformly hold that the 'use' of an automobile need not amount to a 'proximate cause' of the accident for coverage to follow. (See, e.g., *St. Paul Fire & Marine Ins. Co.* v. *Hartford Acc. & Indem. Co.* (1966) 244 Cal.App.2d 826, 831...; *City of Santa Monica* v. *Royal Indem. Co.* (1958) 157 Cal.App.2d 50, 55....) Some minimal causal connection between the vehicle and an accident is, however, required. 'Although the vehicle need not be, in the legal sense, a proximate cause of the injury, the events giving rise to the claim must arise out of, and be related to, its use.' [Citation.]" (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 100, fn. 7 [109 Cal.Rptr. 811, 514 P.2d 123].)

Appellant argues that in this case the boys were *using* the subject vehicle, in that they were sitting in it to load their guns, and the gun which caused the injury was resting on the car seat. We agree with this contention.

"[T]he word 'use' can be construed to extend to any utilization of the insured vehicle in a manner intended or contemplated by the in-

sured . . . . Thus, a person is 'using' a motor vehicle if he lets a friend drive it." (*United Services Automobile Assn.* v. *United States Fire Ins. Co.* (1973) 36 Cal.App.3d 765, 770 [111 Cal.Rptr. 595].)

However, appellant does not demonstrate any manner in which that use of the vehicle caused the injury. Even construing the automobile coverage clause broadly so as to afford the greatest possible protection to the insured (*Ensign* v. *Pacific Mut. Life Ins. Co.* (1957) 47 Cal.2d 884, 888 [306 P.2d 448]), we cannot create automobile liability coverage where none was intended by either party to the insurance contract. The injury arose out of the conduct of Kris Helm in pulling back the bolt of the rifle when it was pointed at Glenn Clark. It did not arise out of the use of the car.

"Although the word 'use' must be given an all-inclusive connotation, there must be a causal connection between the use and the injury. The automobile is so much a part of American life that there are few activities in which the 'use of an automobile' does not play a part somewhere in the chain of events. Clearly the parties to an automobile liability policy do not contemplate a general liability insurance contract." (*Truck Ins. Exch.* v. *Webb* (1967) 256 Cal.App.2d 140, 145 [63 Cal. Rptr. 791].)

In 1973, the California Supreme Court addressed a problem similar to that presented in the instant case. In *State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94, the insured was driving his automobile in the country with two passengers, hunting jackrabbits by shooting out of the windows of the moving vehicle. He had previously modified his .357 Magnum handgun to provide hair-trigger action. He drove his car off the paved road to chase a rabbit, hit a bump, and the gun discharged, injuring a passenger. The court concluded that both the automobile and homeowners liability policies covered the accident in question. The accident was caused by the personal negligence of the insured in the modification of his weapon, and by his conduct in driving the vehicle off the paved road over bumpy terrain. At footnote 8 on page 101, the court explained:

"Our conclusion that the automobile policy provides coverage for the 'shooting' accident in the instant case does not conflict with a long line of cases finding no automobile coverage for somewhat similar hunting accidents. In all such cases the courts have specifically noted that there

was *absolutely no* causal relationship between the accidental firing of the gun and the use of the automobile. [Citations.] Whenever circumstances reveal that the insured vehicle did bear some, albeit slight, causal connection with the shooting accident, courts have generally permitted recovery under automobile liability policies. [Citations.]" (Italics in original.) (*State Farm Mut. Auto. Ins. Co. v. Partridge, supra*, 10 Cal.3d at p. 101, fn. 8.)

The cases cited in the foregoing *Partridge* footnote reflect that mere presence in an automobile at the time of a shooting accident does not establish the required causal connection between the car and the incident.

In *Brenner* v. *Aetna Insurance Company* (1968) 8 Ariz.App. 272 [445 P.2d 474, 478], defendant was on the front passenger seat of a vehicle with a loaded gun in his lap; the gun accidentally discharged. The court, in seeking "some causal relation or connection," stated that the evidence established that no motion of the vehicle or contract with it caused the gun to go off, and found no coverage under the automobile policy.

The same conclusion was reached in *United States Fidelity & G. Co.* v. *Western Fire Ins. Co.* (Ky. 1970) 450 S.W.2d 491, where a passenger in the rear seat of a car began to load a gun, which immediately discharged, striking the insured in the back. The record contained a stipulation that no movement of the car nor road condition contributed to the accident.

In *Azar* v. *Employers Casualty Company* (1972) 178 Colo. 58 [495 P.2d 554], an operator of a vehicle, on a hunting trip, stopped the car to shoot at rabbits. When another car was seen approaching, he pulled his rifle in through the window and shot his companion. The court found no causal connection between the use of the automobile and the injury and held that the homeowners policy covered the incident. To the same effect, see *National Union F. Ins. Co. of Pittsburgh, Pa.* v. *Bruecks* (1966) 179 Neb. 642 [139 N.W.2d 821, 825-826].

On the other hand, automobile liability policies have been found to afford coverage whenever some relationship exists between the use of the automobile and the accident. In *Viani* v. *Aetna Insurance Company* (1972) 95 Idaho 22, [501 P.2d 706], defendant was unloading material from the back of his camper truck. He removed the victim's sleeping

bag from the truck and threw it on the ground, whereupon a concealed loaded gun in the bag went off, injuring the victim. The court recognized the well established rule that "use" of a vehicle includes its loading and unloading, and found that the automobile policy provided coverage on that basis.

In *National Indemnity Co.* v. *Farmers Home Mutual Ins. Co.* (1979) 95 Cal.App.3d 102, 109 [157 Cal.Rptr. 98], an insured was driving her nephew to his home. On arrival there, the child jumped out of the car and ran into the street where he was struck by an oncoming car. In holding that automobile, and not homeowners, insurance covered the accident, the court said at page 109: "There is a complete absence of conduct on the part of the insured which is independent of and unrelated to the 'use' of the vehicle. The conduct of the insured which contributed to the injury simply cannot be dissociated from the use of the vehicle. Nor did the injury, insofar as the insured is concerned, involve an instrumentality other than the vehicle itself. [Citation.] This being so, the exclusion clause in the Farmers homeowners policy must be given effect."

In *National American Ins. Co.* v. *Insurance Co. of North America* (1977) 74 Cal.App.3d 565, 571 [140 Cal.Rptr. 828], a pedestrian sued the occupant of a vehicle who had thrown an egg at his face, causing the loss of an eye. The court found that the car, and thus the egg, were traveling at 40 miles per hour at the time of the impact and thus the accident resulted from "auto-related" conduct.

The facts of this case are much more closely related to those in the first line of cases cited by *Partridge*, wherein no relationship was found to exist between the vehicle and the accident. The argument by appellant that but for the vehicle, the boys would not have been at the site of the accident, is simply specious. Carried to its logical conclusion, it would attach automobile insurance coverage to every accident which occurred after an insured had first been transported by automobile.

■ The vehicle in this case was not moving at the time the gun discharged. No one contends that any action on the part of the driver, *related to the automobile*, caused the gun to go off. "The circumstance that the placing of the loaded gun in a hazardous position in the vehicle increased the danger of its firing and harming an occupant does not militate against the conclusion reached by us." (*Glens Falls Ins. Co.* v. *Rich* (1975) 49 Cal.App.3d 390, 398 [122 Cal.Rptr. 696].)

We conclude, as did the Colorado court in *Azar* v. *Employers Casualty Company, supra*, 495 P.2d at page 555: "In our view, it cannot reasonably be said that the discharge of the weapon in this case originated from, grew out of or flowed from the use of the vehicle. Rather, the injury originated from, grew out of or flowed from the use of the firearm."

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.