942 F.2d 790
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,
Plaintiff-Appellant,
v.
William C. LOCKETT, Arlene F. Lockett, Defendants-Appellees.
 No. 89-16488.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 9, 1991.
Decided Aug. 28, 1991.
 
 Before WALLACE, Chief Judge, and GOODWIN and FLETCHER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff American Guarantee & Liability Insurance Company ("American Guarantee") appeals from the district court's adverse grant of summary judgment in its declaratory judgment action against defendants William and Arlene Lockett. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.
 
 FACTS
 
 3
 The Locketts, travelling from the Lake Tahoe area back to their home in Sacramento, turned off Interstate 80 at the Gold Run rest stop in order to use the rest rooms and make a telephone call. After parking, William walked to the back of the car and opened the trunk to obtain the telephone number he needed for the phone call. Parked near the Locketts' car was a pickup truck owned by Daniel Scott Heinrich, who was on his way home after a deer hunting expedition. Heinrich had pulled into the rest stop in order to correct a mistake: he had forgotten to unload his rifle before getting in the truck and starting the drive home, and he knew that it was against California law to carry a loaded gun in a motor vehicle. See Cal.Penal Code § 12031(a) (West Supp.1991). Heinrich removed the rifle from the truck's gun rack. Sitting in the driver's seat, he pointed the rifle into the right front passenger seat and attempted to unload it, but grew impatient and improperly forced the lever. The gun discharged, sending a bullet through the seat and the closed passenger door and into the pavement. Fragments of the bullet and the pavement struck William Lockett on his hands and left leg.
 
 
 4
 Heinrich being an uninsured motorist, the Locketts sought coverage for William's injuries under the uninsured motorist endorsement accompanying their automobile insurance policy with American Guarantee. Such coverage is required in every auto insurance policy sold in California. Cal.Ins.Code § 11580.2(a)(1) (West Supp.1991). The endorsement on the Locketts' policy provides that American Guarantee
 
 
 5
 will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of ... [b]odily injury sustained by a covered person and caused by an accident....
 
 
 6
 The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.
 
 
 7
 American Guarantee refused the Locketts' claim for coverage and filed an action in federal district court based on diversity of the parties, 28 U.S.C. § 1332(a), seeking a declaratory judgment that the endorsement did not cover the injuries sustained by William Lockett. Upon American Guarantee's motion for summary judgment and the Locketts' opposition, which the parties agreed to treat as a cross-motion for summary judgment, the district court entered summary judgment for the Locketts. American Guarantee filed a timely notice of appeal.
 
 DISCUSSION
 
 8
 We review the district court's grant of summary judgment de novo. Gulf Ins. Co. v. L.A. Effects Group, Inc., 827 F.2d 574, 576 (9th Cir.1987). We also review de novo the district court's interpretation of California law, the state law that governs this diversity action. Salve Regina College v. Russell, 111 S.Ct. 1217 (1991). We are bound by the decisions of the Supreme Court of California, but in the absence of a controlling decision by that court we must predict how it would rule by referring to decisions of California's intermediate appellate courts and well-reasoned opinions from other jurisdictions. State Farm Mut. Auto. Ins. Co. v. Davis, No. 89-56044, Slip Op. 8121, 8127 (9th Cir. July 1, 1991); In re Kirkland, 915 F.2d 1236, 1238-39 (9th Cir.1990).
 
 
 9
 The only issue raised on appeal is whether Heinrich's liability for William Lockett's injuries can be said to "arise out of the ... use of" his truck within the meaning of the Locketts' uninsured motorist endorsement. The leading California Supreme Court case interpreting this insurance policy language is State Farm Mutual Automobile Insurance Co. v. Partridge, 514 P.2d 123, 109 Cal.Rptr. 811, 10 Cal.3d 94 (1973), limited on other grounds, Garvey v. State Farm Fire and Casualty Co., 770 P.2d 704, 257 Cal.Rptr. 292, 48 Cal.3d 395 (1989). In Partridge, one of two passengers in a Ford Bronco accidentally was shot by the driver, who was hunting jackrabbits with a .357 Magnum pistol while driving off-road. When the Bronco hit a bump, the driver's gun went off, and the bullet penetrated the passenger's spinal cord, leaving her paralyzed. The driver's automobile liability policy provided coverage for injuries "caused by accident arising out of the ... use ... of the owned motor vehicle." Partridge, 514 P.2d at 126. The court concluded that this clause extended coverage to the passenger's injuries.[1] It explained:
 
 
 10
 Past California cases have established beyond contention that this language of "arising out of the use," when utilized in a coverage or insuring clause of an insurance policy, has broad and comprehensive application, and affords coverage for injuries bearing almost any casual relation with the vehicle.
 
 
 11
 Id. at 127 (emphases omitted). The required causal relation "need not amount to a 'proximate cause' of the accident for coverage to follow," but there must be at least "[s]ome minimal causal connection between the vehicle and an accident." Id. at 127 n. 7. The "minimal causal connection" requirement is truly minimal; even a slight causal connection between use of the vehicle and the accident is sufficient. See id. at 128 n. 8.
 
 
 12
 The Locketts argue that the accident arose out of the use of Heinrich's truck because his unloading of the rifle was an integral part of the process of properly "loading" the truck. More specifically, the Locketts point out that Heinrich had improperly--indeed illegally--loaded the truck in the first place by failing to remove the cartridges from his rifle before loading it on the truck's gun rack. Once Heinrich realized his error, he pulled off the Interstate and did what he should have done when he loaded the truck in the first place, and what California required him to do: he unloaded the rifle. This action, the Locketts contend, was therefore part of the proper loading of the truck and satisfies the "minimal causal connection" requirement defined in Partridge.
 
 
 13
 It is clear under California law that the "loading" of a vehicle constitutes "use" within the meaning of an uninsured motorist endorsement, as American Guarantee concedes.[2] See Brief of Appellant at 8. It is also clear that California law views the terms "loading" and "unloading" expansively in the context of insurance coverage clauses. The terms are not limited to the actual physical act of placing an item into, or removing it from, a vehicle. For example, in National Indemnity Co. v. Farmers Home Mutual Insurance Co., 157 Cal.Rptr. 98, 95 Cal.App.3d 102 (Cal.Ct.App.1979), the court found coverage for injuries sustained by a six-year-old boy who was hit by a car after exiting his aunt's vehicle. The court explained that "[t]he process of unloading a child from a motor vehicle does not end the moment that the child's feet touch the ground or when his or her body is entirely outside the vehicle." 157 Cal.Rptr. at 100-01. See also International Business Machs. Corp. v. Truck Ins. Exch., 474 P.2d 431, 433, 89 Cal.Rptr. 615, 2 Cal.3d 1026 (1970) (loading and unloading encompass "complete operation of pickup and delivery"); Hartford Accident & Indem. Co. v. Civil Service Employees Ins. Co., 108 Cal.Rptr. 737, 741-42, 33 Cal.App.3d 26 (Cal.Ct.App.1973) (dog bite suffered when dog alighted from parked car found to be covered as accident arising out of unloading of car). California law requires that we give the term "loading" a liberal interpretation in this context.
 
 
 14
 Because no California case has explored the fine points of what constitutes "loading" where the object is a gun, we turn to decisions from other jurisdictions that have considered this question. A Colorado Supreme Court case provides particularly strong support for the Locketts' position. In Kohl v. Union Insurance Co., 731 P.2d 134 (Colo.1986), a group of five hunters on their way home from their outdoor adventures had pulled off the road for refreshments. One of them, Weaver, decided to remove his rifle from the gun rack on his jeep and unload and secure it for the rest of the ride home. As he pulled it from the gun rack, it discharged, killing one and injuring two of the other hunters. The court held that the accident was covered by Weaver's auto insurance policy, which covered injuries from accidents "on account of the use of a motor vehicle." 731 P.2d at 135. The court found the necessary causal relationship between the accident and the use of the jeep in that "[t]he accident occurred while Weaver was lifting the rifle out of the jeep's gun rack preparatory to unloading the rifle and safely storing it for the journey home." Id. at 137. As the court noted, "[t]he shooting would not have occurred if Weaver had not been engaged in an unsuccessful attempt to secure the rifle for a safe journey home." Id. at 137 n. 3. We are presented with an even stronger case for coverage: Heinrich stopped his car for the specific purpose of unloading his rifle to comply with California law. The same causal connection identified in Kohl links the accidental shooting of William Lockett to Heinrich's attempt to properly load his truck to comply with California law.
 
 
 15
 Several other courts also have found coverage for accidental shootings that occurred when a hunter was unloading a gun preparatory to loading it into a vehicle. In two of them, the court found it determinative that the accident arose out of the hunter's attempt to comply with a statute prohibiting the transport of a loaded gun in a motor vehicle. See Nationwide Ins. Co. v. Auto-Owners Mut. Ins. Co., 525 N.E.2d 508, 511-12, 37 Ohio App.3d 199 (Ohio Ct.App.1987) (because hunter was required to comply with statute, "a foreseeable risk and a sufficient causal relationship existed between the policy prerequisite, 'arising out of the use' of the vehicle," and the accident); Toler v. Country Mut. Ins. Co., 462 N.E.2d 909, 913, 123 Ill.App.3d 386 (Ill.App.Ct.1984) (unloading of rifle to comply with statutory requirements and safe practice "was an integral part of the process of loading it into the truck so as to come within the coverage of the policy"). See also Laviana v. Shelby Mut. Ins. Co., 224 F.Supp. 563 (D.Vt.1963) (finding sufficient causal connection between accident and "safe and customary practice" of unloading gun prior to entering car); Allstate Ins. Co. v. Valdez, 190 F.Supp. 893 (E.D.Mich.1961) (finding sufficient causal connection between accident and use of car where hunter was fulfilling obligation under Michigan law in unloading gun preparatory to loading it into car).
 
 
 16
 The above cases persuade us that William Lockett's injuries are covered by the uninsured motorist endorsement issued by American Guarantee. None of the cases cited by American Guarantee undercuts this conclusion. American Guarantee first relies on numerous decisions of the California courts of appeals, but none of them concerns the loading of a vehicle. The case with the most apparent similarities to the present case is Aetna Casualty & Surety Co. v. Safeco Insurance Co., 163 Cal.Rptr. 219, 103 Cal.App.3d 694 (Cal.Ct.App.1980), in which the court denied coverage for a gunshot wound suffered by one of three teenage boys who had driven out to a target practice site and were loading their guns in the car when one of the guns discharged. Finding the Partridge standard unsatisfied, the court emphasized that "[n]o one contends that any action on the part of the driver, related to the automobile, caused the gun to go off." Id. at 223 (emphasis in original). In the absence of such a contention, the court held, the boys' "mere presence in an automobile at the time of a shooting accident" could not establish the required causal connection. Id. at 222. In contrast to Aetna, the present case involves an accident that arose out of the driver's attempt to conform to California law by unloading his gun before continuing to transport it in his truck. The accident was directly related to the proper loading--and thus the use--of the vehicle.
 
 
 17
 Two other California cases cited by American Guarantee are similarly distinguishable, as they involved accidents with no direct connection to the "use" of a car. See State Farm Mut. Auto. Ins. Co. v. Spann, 106 Cal.Rptr. 923, 925, 31 Cal.App.3d 97 (Cal.Ct.App.1973) (denying uninsured motorist coverage where there was no evidence to link pedestrian who caused one-car accident to use of any car); Farmers Ins. Exch. v. Hansel, 90 Cal.Rptr. 654, 656, 12 Cal.App.3d 570 (Cal.Ct.App.1970) (denying coverage for injury sustained during fight when only "use" of car was as hard object on which to break bottle for weapon and as shield behind which to hide). In the present case, the car was being used to transport the gun. California law specifically contemplates such use and requires that weapons be unloaded before they are transported. It is thus perfectly reasonable for Californians to expect that their insurance will cover accidents that occur in connection with the loading of a gun into a car.
 
 
 18
 The three remaining California cases cited by American Guarantee are also inapposite. In two of them, the court denied coverage because the only "use" of the car was as a means of transportation to the locus of an accident. See United Services Auto Ass'n v. Ledger, 234 Cal.Rptr. 570, 572, 189 Cal.App.3d 779 (Cal.Ct.App.1987); Interinsurance Exch. of Auto Club of S. Cal. v. Macias, 172 Cal.Rptr. 385, 116 Cal.App.3d 935 (Cal.Ct.App.1981). In the third, the court refused to find coverage where the only purported "use" of the car was a husband's failure to use his car to provide transportation home for his wife. See Farmers Ins. Exch. v. Reed, 248 Cal.Rptr. 11, 200 Cal.App.3d 1230 (Cal.Ct.App.1988).
 
 
 19
 American Guarantee also directs our attention to three decisions from other jurisdictions in which the courts denied coverage for accidental shootings. However, in each of these decisions, the court distinguished its holding from cases like the present one. In State Farm Mutual Automobile Insurance Co. v. Centennial Insurance Co., 543 P.2d 645, 14 Wash.App. 541 (Wash.Ct.App.1975), review denied, 87 Wash.2d 1003 (1976), the court denied coverage for a post-hunting accident that arose when a passenger in a moving car was attempting to unload his rifle and one of the shells misfired, hitting the driver in the leg. In reaching its holding, the court explicitly distinguished cases involving "loading and unloading:"
 
 
 20
 Clearly, the unloading of one's rifle preparatory to entering a vehicle is the kind of customary behavior contemplated by the parties to a hunting trip. Thus, it is specifically anticipated behavior, and coverage is intended by the parties to an insurance contract. But we do not deem it appropriate to apply the rule regarding loading and unloading a vehicle to an attempt to unload a gun in a moving vehicle.
 
 
 21
 543 P.2d at 647 (emphasis in original). Central to the court's holding was the passenger's illegal and unsafe decision to unload his gun while the vehicle was moving. Id. Heinrich, in contrast, made the safe decision: he pulled off the highway and stopped his truck before unloading his rifle to conform with California law. The other two decisions cited by American Guarantee specifically noted the rule that automobile insurance coverage extends to injuries caused by "the accidental discharge of guns during the process of loading them into or unloading them from vehicles." Cameron Mut. Ins. Co. v. Ward, 599 S.W.2d 13, 15 (Mo.Ct.App.1980); see also Criterion Ins. Co. v. Velthouse, 751 P.2d 1, 3 (Alaska 1986). Both the Ward and Velthouse courts emphasized that the vehicle was the mere situs of the accident and distinguished cases involving the loading of guns into vehicles. See Ward, 599 S.W.2d at 18; Velthouse, 751 P.2d at 5.
 
 
 22
 In sum, none of American Guarantee's cases addresses the factual situation before us. Based on the California Supreme Court's decision in Partridge and the well-reasoned opinions in Kohl, National Insurance, and Toler, we hold that the injuries sustained by William Lockett arose out of the use of Heinrich's truck within the meaning of the uninsured motorist endorsement issued to the Locketts by American Guarantee.
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although Partridge did not involve uninsured motorist coverage, its rule and reasoning nevertheless apply to the present case. The purposes that underlie the California statute requiring uninsured motorist coverage, Cal.Ins.Code § 11580.2, and the policies that provide such coverage are served only if the scope of the coverage "is limited to that of requiring reimbursement to the insured by his own carrier of the type of loss which would have been covered by an automobile liability policy had the uninsured motorist been in fact insured." Farmers Ins. Exch. v. Hansel, 90 Cal.Rptr. 654, 656, 12 Cal.App.3d 570 (Cal.Ct.App.1970)
 
 
 [2]
 The endorsement does not contain a definition of the term "use." However, the California Insurance Code's definition, upon which American Guarantee relies, states: "The term 'use' when applied to a motor vehicle shall only mean operating, maintaining, loading, or unloading a motor vehicle." Cal.Ins.Code § 11580.06(g) (West 1988). Even if the endorsement does not actually incorporate this statutory definition, California case law nevertheless mandates that " 'use' of a vehicle includes its loading and unloading." International Business Machs. Corp. v. Truck Ins. Exch., 474 P.2d 431, 433, 89 Cal.Rptr. 615, 2 Cal.3d 1026 (1970) (footnote omitted)