**GREAT WEST CASUALTY COMPANY, a Nebraska Corporation, Plaintiff,**

v.

**Richard SEE; Schneider National Carriers, Inc.; Freda See; and Roes I through X, inclusive, Defendants.**

**No. CV–N–00–516–RAM.**

United States District Court, D. Nevada.

Feb. 12, 2002.

Christian L. Moore, Leigh T. Goddard, Lemons, Grundy & Eisenberg, Reno, NV, for plaintiff.

Margo Piscevich, Piscevich & Fenner, Reno, NV, for defendants.

### *MEMORANDUM DECISION AND ORDER*

MCQUAID, United States Magistrate Judge.

This case involves the interpretation of an automobile insurance policy and whether liability for personal injuries suffered by a third party when a gun accidentally discharged while being unloaded by the in-

sured from an automobile is covered by the insured's policy. Plaintiff Great West Casualty Company ("Great West"), the issuer of the insurance policy, brought this action seeking a declaration that the insurance policy does not provide coverage for the personal injury liability claims made against Defendants Richard See and Schneider National Carriers, Inc. ("Schneider") (Doc. # 1). Schneider has answered and asserted a counterclaim for attorney's fees and costs against Great West on the grounds that it may recover its legal fees and costs when forced to effectuate coverage under the insurance policy through court process (Doc. # 9). Now before the court are the parties' Cross Motions for Summary Judgment (Docs.# 27, 28). Great West has also filed a Motion to Dismiss Schneider's counterclaim for attorney's fees and costs (Doc. # 29). Schneider has opposed Great West's motions (Doc. # 30) and Great West replied (Doc. # 33). Great West filed its own opposition to Schneider's Motion for Summary Judgment (Doc. # 32) and Schneider replied (Doc. # 34). For the reasons provided below, Schneider's Motion is granted and Great West's respective motions are denied.

## BACKGROUND

The parties do not dispute any of the facts in this case. Great West issued an insurance policy to Schneider, naming as the insured, "Independent Contractors Leased To: Schneider National Carriers Inc." Complaint, ex. A, at 1 (the "Policy"). Defendant Richard See was an independent contractor or leased driver to Schneider. As an independent contractor or leased driver, See was an insured under the Policy. *See id.*[1] Schneider is also a named insured under the Policy. *Id.*

On April 23, 1998, See took his truck to the Freightliner dealership in Las Vegas, Nevada in order to have maintenance work performed on the vehicle.[2] See began unloading his personal belongings from the truck and handing them to his wife, Freda See ("Freda"), who was standing on the ground. While unloading a duffel bag from the cab, See dropped the bag on the ground. When the bag hit the pavement, a handgun inside of the bag accidentally discharged. A bullet from the gun hit Freda, seriously injuring her. (Doc. # 28, at 2).

Freda subsequently filed a personal injury lawsuit against her husband, Schneider, and the manufacturer of the gun. In her complaint, Freda alleged that her husband was negligent in the keeping and handling of the gun which was the proximate cause of her injuries. (*Id.,* ex. C, at 3). She also alleged that See's negligence took place in the course and scope of his employment with Schneider and, as a result, Schneider was vicariously liable for See's negligent conduct. (*Id.* at 4).

---

1. The Policy is a non-trucking automobile liability coverage policy with an unladen trucking endorsement. *See* Complaint, ex. A. Non-trucking automobile liability insurance provides coverage for non-trucking use when the drivers are not under dispatch. Such insurance is designed principally for the protection of the independent truckman when he is not under lease, dispatch, or working in the business of the lessee (*i.e.,* non-trucking uses). (Doc. # 27, ex. 7). Prior insurance practice had been that when the truckman was driving between loads, they were responsible for their own insurance on the vehicle. They were viewed as not operating on behalf of the motor carrier, because they were not hauling cargo. Non-trucking automobile liability coverage alleviates the need for truckmen who operate exclusively for hire to carry a primary policy of their own. *Id.*

2. The Policy was in effect from October 1, 1997 and expired on October 1, 1998. There is no dispute that the Policy was in effect on April 23, 1998, the date of the incident at issue.

Great West is defending both Schneider and See in the personal injury suit on a reservation of rights. (Doc. # 27, at 3–4). In that case, Schneider moved for summary judgment on the ground that See was not acting in the course and scope of his employment with Schneider at the time of the accident. The state district court granted Schneider's motion for summary judgment. See remains as a defendant in that case, *id.*, and Freda has appealed the order dismissing Schneider. (Doc. # 28, at 3). Great West brought this action for declaratory relief contending that the Policy did not cover the underlying incident. Specifically, Great West contends that the loss did not result from the ownership, use, or maintenance of See's vehicle, and is therefore not covered by the Policy. (Doc. # 1).

## DISCUSSION

### A. Standard for Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.CivP. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied*, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

## B. *Coverage Under the Policy*

Both Great West and Schneider have moved for summary judgment asserting that the policy of insurance ("the Policy") issued by Great West to Schneider does or does not, as a matter of law, provide coverage for the potential liability[3] arising out of the accidental shooting of Freda See. The Policy provided that Great West has a "right and duty to defend any 'insured' against a 'suit' asking for such damages [to which the Policy applies]." Plaintiff's Motion for Summary Judgment, ex. A, "Policy." The Policy provided the following coverage:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and *resulting from the ownership, maintenance or use* of a covered "auto" only while:
>
> 1. A covered "auto" is not used to carry property in any business; and
> 2. A covered "auto" is not used in the business of anyone to whom the "auto" is rented, leased or loaned.

*Id.* (emphasis added); *see also id.* (the Truckers–Unladen Liability Coverage Endorsement) (same).

The "ownership, maintenance or use" clause is the only matter in dispute, as the parties agree that See was an "insured" within the meaning of the Policy; that the truck See was driving was a covered "auto"; that there was a "bodily injury" caused by an "accident"; and that the accident occurred during a period in which See was not engaged in carrying property in a business capacity for Schneider. The Policy contains no specific exclusions barring coverage for injuries resulting from the accidental discharge of a firearm or weapon—or simply the loading and unloading of personal property from an automobile—requiring only that the accident result from the ownership, maintenance, or use of the vehicle. If the accident involving the shooting of Freda resulted from the ownership, maintenance, or use of the vehicle, Great West's obligations under the Policy would arise. If the accident cannot be said to have resulted from the ownership, maintenance, or use of the vehicle, no obligations on the part of Great West were created.

 Neither "ownership," "maintenance," nor "use" is defined by the Policy. Where not defined, terms in an insurance contract are to be construed "in their plain and ordinary sense and from the viewpoint of one not trained in law." *Vitale v. Jefferson Ins. Co. of New York*, 5 P.3d 1054, 1057 (Nev.2000). Any ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured. *Id.* However, courts will not rewrite unambiguous provisions or attempt to increase the legal obligations of the parties where the parties intentionally limited such obligations. *See Senteney v. Fire Ins. Exch.*, 101 Nev. 654, 707 P.2d 1149, 1150 (1985).

 With respect to "ownership," it is not in contention that the accidental shooting of Freta somehow arose out of the ownership of the vehicle. It clearly did not. Rather, the parties argue over the interpretation to be given to the terms "maintenance" and "use." First, with respect to "maintenance," Schneider advances an argument that See's act of taking his vehicle in for required maintenance, and his subsequent unloading of his personal property from the vehicle,

---

**3.** Great West acknowledges that the issue of liability may eventually be moot. Under the terms of the discovery order in this case, however, parties were required to submit dispositive motions prior to a final decision in the underlying personal injury action by Freda See in state court.

constitute "maintenance" of the vehicle as contemplated by the Policy. *See* Schneider's Motion for Summary Judgment, at 12. The court disagrees. While Schneider identifies two differing interpretations of the term "maintenance" provided by Great West representatives, *see id.,* this alone is insufficient to create the requisite ambiguity necessary to establish that the term should be construed against Great West in this instance. The plain and ordinary meaning of "maintenance" encompasses the act of keeping the truck in working order through repairs or restoration. The term "maintenance" does not extend as far as Schneider proposes. The court declines to create an artificial ambiguity where none in fact exists. "If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy." *Evans v. Safeco Life Ins. Co.,* 916 F.2d 1437, 1441 (9th Cir.1990) (internal quotation marks and citation omitted) (interpreting provisions of insurance contract under ERISA). Under a different set of circumstances, there may be a closer question of whether or not an activity involves "maintenance" of a vehicle, however Schneider's proffered definition of "maintenance" is insufficient to establish the term was ambiguous in this context. The accidental shooting of Freda cannot be said to have arose out of the maintenance of See's vehicle.

Second, with respect to "use" of the vehicle, Schneider's assertion of ambiguity is much stronger. The term "use" is subject to broad interpretation and "has been a general catch-all term construed by the courts to include all proper uses of a vehicle." *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.,* 491 S.W.2d 363, 365 (Tenn.1973); *see also State Farm Mut. Auto. Ins. Co. v. Partridge,* 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973) ("[The phrase] 'arising out of the use,' [w]hen utilized in a cover-

age or insuring clause of an insurance policy, has broad and comprehensive application, and affords coverage for injuries bearing almost [a]ny causal relation with the vehicle."). Whether the parties actually intended the unloading of personal property to constitute a "use" of the vehicle is uncertain. *See* Great West's Opposition, at 3. The loading and unloading of personal property would generally be considered a proper use of the vehicle. *See Travelers Ins. Co.,* 491 S.W.2d at 365; *Fid. & Cas. Co. of N.Y. v. North Carolina Farm Bureau Mut. Ins. Co.,* 16 N.C.App. 194, 192 S.E.2d 113, 118 (1972) ("[W]hen the policy is silent on the point, loading and unloading is using an insured motor vehicle.") In light of the uncertainty created by the Policy, the court construes the contract in favor of the insured and finds that the unloading of See's vehicle constituted a "use" of the vehicle within the meaning of the Policy. Had Great West wanted to restrict the scope of coverage for the use of the vehicle, it was in a position to do so by including an express provision in the Policy.

Having established See's actions of unloading his personal belongings constituted a use of the vehicle, the court must address Great West's primary contention: Freda's injuries did not "arise out of" that use. *See* Great West's Opposition, at 3. It is not enough that a "use" of the vehicle is established; the "arising out of" language in the Policy mandates that there exist a causal connection between that use and the resulting injury. *See Nationwide Mut. Ins. Co. v. Brown,* 779 F.2d 984, 989 (4th Cir.1985). "Such causal connection must be more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use of the vehicle." *Id.* "This causal connection may be shown to be an injury which is the natural and reasonable incident or conse-

quence of the use, though not foreseen or expected, but the injury cannot be said to arise out of the use of an automobile if it was directly caused by some independent act or intervening cause wholly disassociated from, independent of, and remote from the use of the automobile." *Fid. & Cas. Co. of N.Y.*, 192 S.E.2d at 118; *see also State Farm Mut. Auto. Ins. Co. v. Davis*, 937 F.2d 1415, 1419 (9th Cir.1991).

Cases involving accidental shootings and motor vehicles which analyze the existence of a causal connection between the two can be categorized into one of five areas. *See Quarles v. State Farm Mut. Auto. Ins. Co.*, 533 So.2d 809, 811 (Fla.Ct.App.1988) (identifying categories). The first category involves accidental discharge of guns inside motionless vehicles while an occupant is handling or playing with the gun. *Id.* at 811. "Without exception, these cases hold that no coverage exits under the insuring agreements of the respective automobile policies involved because there was no causal connection between the discharge of the guns and the use of the vehicles . . . ." *Quarles*, 533 So.2d at 811. Thus, injury to a passenger from the accidental discharge of a firearm in a stopped car was not covered, because even though the injury occurred in the car, it was not caused by the use of the car. *Aetna Cas. & Sur. Co. v. Safeco Ins. Co.*, 103 Cal. App.3d 694, 163 Cal.Rptr. 219 (1980); *see also Criterion Ins. Co. v. Velthouse*, 751 P.2d 1 (Alaska 1986); *Nat'l Family Ins. Co. v. Boyer*, 269 N.W.2d 10 (Minn.1978).

The second category involves the accidental discharge of guns while they are being loaded or unloaded from the vehicles. *Quarles*, 533 So.2d at 811. "Without exception, these cases hold that coverage exists under the insuring agreements of the respective automobile policies involved by reason of coverage extended to the process of loading and unloading vehicles." *Cameron Mut. Ins. Co. v. Ward*, 599 S.W.2d 13, 15–16 (Mo.Ct.App.1980); *see, e.g., State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 350 S.E.2d 66 (1986) (coverage provided where a rifle accidentally discharged while being removed by the insured from a motor vehicle as the use of an automobile includes its loading and unloading).

The third category of cases involves the use of a physical portion of the vehicle as a "gun rest" for the purpose of firing a weapon. Courts are divided over whether there is coverage in these cases. *Quarles*, 533 So.2d at 811.

The fourth category of cases involves the accidental discharge of guns resting in or being removed from gun racks permanently attached to vehicles. Coverage is generally found to exist because the presence of the permanently attached gun racks in the vehicles established a significant causal connection between the use of the vehicles and the accidental discharge of the weapons carried in the vehicles. *Id.* at 811–12.

The final category of cases involves the accidental discharge of guns inside a vehicle caused by the actual movement or operation of the vehicle. *See, e.g., Partridge*, 109 Cal.Rptr. 811, 514 P.2d at 128. In these cases, the causal connection between the use of the vehicle and the resulting injury is quite clear and coverage has been found. In *Partridge*, the insured was driving his vehicle while holding a firearm which he had modified to lighten the trigger pull. The vehicle hit a bump in the road and the gun discharged, wounding a passenger. The California Supreme Court stated the accident was "clearly covered" by the driver's policy for injuries arising out of the use of the vehicle. *Id.* The court construed the "use" language to require "[s]ome minimal causal connection" between the vehicle and the accident, though not a showing of proximate causation.

That requirement was satisfied by the role of the vehicle in causing the gun to discharge. *Id.*

Both parties identify many cases which discuss the numerous sets of circumstances that can be expected to arise when a victim is injured through the accidental discharge of a gun in or around an automobile. While the outcome of such cases is quite fact specific, the grouping of cases identified by the *Quarles* court is both helpful and instructive. *See also Ward,* 599 S.W.2d at 15 (finding the practice of "indiscriminately cit[ing] a number of cases" for determining the existence or nonexistence of coverage under automobile liability insurance policies in vehicle gun discharge cases is "of nebulous value absent being conceptually categorized."). Perhaps the most important categorization to be extracted from the case law is identifying, at the time of the accident, the "use" for which the vehicle was being made. The causal connection between one "use" may be stronger than that of another. For example, driving the vehicle will always be considered a valid use. As such, an injury resulting from an accidental discharge of a gun when the vehicle hits a bump in the road has been held to be causally connected to the vehicle's use. *Partridge,* 109 Cal.Rptr. 811, 514 P.2d 123. In contrast, simply handling a gun inside a motionless vehicle is almost never considered a valid use of the automobile. There is no relationship between the use of the gun and the use of the vehicle for transportation purposes. The vehicle will almost uniformly be considered merely the situs of the injury and, as a result, coverage will be denied. *See Boyer,* 269 N.W.2d at 15; *Davis,* 937 F.2d at 1422; *Colonial Ins. Co. v. Lumpkin,* 207 Ga.App. 376, 428 S.E.2d 351 (1993); *Vanguard Ins. Co. v. Cantrell,* 18 Ariz.App. 486, 503 P.2d 962 (1972); *Azar v. Employers Cas. Co.,* 178 Colo. 58, 495 P.2d 554 (1972).

Schneider asserts that this case falls squarely into the second category. The second category encompasses those accidents resulting from the loading and unloading of a vehicle. The court agrees. The unloading of the vehicle was the reason for the accidental discharge of See's gun. At the time of the injury, the truck was not being used for transportation purposes. Nor is this a case involving the handling of a gun inside of a vehicle. The circumstances present here are most clearly encompassed by the second category.

Having found that the process of loading and unloading of the vehicle is covered by the Policy, it seems clear that any injury arising directly out of that process may be viewed as causally connected to the use of the vehicle. *See State Capital Ins. Co.,* 350 S.E.2d at 67. In *State Capital Insurance Co.,* the insured had placed his gun in a storage space behind the seat. When the insured's hand came in contact with the gun while he was in the process of unloading it from the vehicle, it accidentally discharged injuring a third party. *Id.* The court found a causal connection between the use of the vehicle and the accident, stating: "Since the transportation and unloading of firearms are ordinary and customary uses of a motor vehicle, and the injury-causing accident here resulted from the unloading of the transported rifle, such injuries were a natural and reasonable incident or consequence of the use of the motor vehicle." *Id.* at 70.

See's act of unloading the vehicle is what caused the accidental discharge of the gun. The injury was more than simply incidental to that use. It was foreseeable that the unloading of property from the vehicle may result in injury. Such injuries are reasonably foreseeable and sufficiently connected to the unloading of the vehicle to trigger Great West's duties under the Policy. Again, if Great West had chosen

to restrict the scope of coverage for the use of the vehicle, it was capable of doing so.

■ Great West's primary arguments regarding the lack of a causal connection are based on case law involving intentional tortious conduct. *See, e.g., Brown,* 779 F.2d at 989; *Detroit Auto. Inter–Insurance Exch. v. Higginbotham,* 95 Mich.App. 213, 290 N.W.2d 414, 417 (1980). Both *Brown* and *Higginbotham* found that intentional shootings did not arise out of the use of the vehicles because the intentional shootings could not be considered to be a normal use of the vehicle. *See Brown,* 779 F.2d at 989; *Higginbotham,* 290 N.W.2d at 419. Once again, it is important to categorize what use of the vehicle is being made. Clearly, if an insured's use of her vehicle is not covered by the applicable insurance policy, any injury arising out of that unintended use cannot be within the policy's coverage. Here, in contrast, having already construed the term "use" to include the unloading of personal property from the vehicle, there exists a use of the vehicle for which coverage is found to exist. The accidental discharge of the firearm during the vehicle's unloading was a result of that use and should be covered by the Policy.

Finally, Great West attempts to distinguish those "unloading cases" where the transportation of firearms is considered an ordinary and customary use of a motor vehicle, *see, e.g., State Capital Ins. Co.,* 350 S.E.2d at 69, or where the insureds were on hunting trips, *see, e.g., Travelers Ins. Co.,* 491 S.W.2d at 366, from the facts present in this case. Great West argues that the vehicle in question was not ordinarily and customarily used for the transportation of firearms. In fact, it was against Schneider's policy for See to have a firearm in the cab of his commercial truck. Great West's Opposition, at 9. However, the fact that See was carrying an item that violated the policy of his employer is somewhat beside the point. The unloading of any cargo item could have caused Freda's injuries. If, for example, See had instead dropped his duffel bag on Freda's foot thereby causing her injury, under the terms of the Policy the outcome of this case would be the same. Any foreseeable injury causally connected to a valid use of the vehicle should be covered. The fact that See violated a policy of carrying a firearm is irrelevant to whether the Policy provides coverage for injuries resulting from the unloading of personal property. The court finds that coverage does exist. For those reasons, Schneider's Motion for Summary Judgment is *GRANTED* and Great West's Motion for Summary Judgment is *DENIED.*

## C. *Attorney's Fees and Costs*

Great West also moves pursuant to Fed. R.Civ.P. 12(b)(6) for an order dismissing Schneider's counterclaim for attorney's fees and costs. Under Rule 12(b)(6), a claim may be dismissed either because it asserts a legal theory that is not cognizable as a matter of law or because it fails to allege sufficient facts to support a cognizable legal claim. *See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.,* 88 F.3d 780, 783 (9th Cir.1996). When a claim is challenged under Rule 12(b)(6), the court presumes that all well-pleaded allegations are true, resolves all doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party. *See Albright v. Oliver,* 510 U.S. 266, 267, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Dismissal is proper only where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations contained in the counterclaim. *See Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Schneider's counterclaim for attorney's fees and costs is premised on the grounds that it may recover such fees and costs as a result of being cast in a defensive posture by the legal steps Great West took in an effort to free itself from its obligations under the Policy.

In general, a party's fees and costs are not recoverable unless statutorily or contractually authorized. *See State Dep't of Human Res. v. Fowler*, 109 Nev. 782, 858 P.2d 375 (1993); Nev. Rev. Stat § 18.010. Certain courts have recognized an exception to the general rule, allowing an insured to recover those expenses incurred in defending a declaratory judgment from the insurer if coverage is found. *See, e.g., Hanover Ins. Co. v. Golden*, 51 Mass.App. Ct. 465, 746 N.E.2d 574 (2001); *United States Fid. & Guar. Co. v. N.Y., Susquehanna & W. Ry. Corp.*, 277 A.D.2d 1026, 716 N.Y.S.2d 181 (N.Y.App.Div.2000); *Farmers Ins. Exch. v. Schropp*, 222 Kan. 612, 567 P.2d 1359 (1977). However, there is no uniform agreement on whether such fees and costs are recoverable. Many court have held that no such right exists. *See, e.g., West Am. Ins. Co. v. AV & S*, 145 F.3d 1224 (10th Cir.1998); *Montgomery Ward & Co. v. Pac. Indem. Co.*, 557 F.2d 51 (3d Cir.1977); *New Hampshire Ins. Co. v. Christy*, 200 N.W.2d 834 (Iowa 1972); *Brown Bag Co. v. Bituminous Cas. Co.*, 117 Ill.App.2d 287, 254 N.E.2d 577 (1969). Nevada has yet to address this specific issue. *But see Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 102 Nev. 601, 729 P.2d 1352 (1986) (reversing award of attorneys' fees in declaratory action where court found insurer had reasonable basis for denial of payment based on question concerning scope of coverage).

■ Schneider urges this court to adopt such an exception to the general rule to allow recovery of its fees and costs. The court need not reach the issue of whether such an exception should be allowed under Nevada law because such costs and fees may be allowed as a matter of contract. Specifically, the Policy provides that Great West "will pay ... [a]ll reasonable expenses incurred by the 'insured' at our request ...." Policy § II(A)(2)(a)(4). This clause has been interpreted to allow recovery of attorneys' fees incurred in defending a declaratory action to determine the existence of coverage under a liability policy. For example, in *Upland Mutual Ins., Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974), the insurance company contended that its insurance policy did not afford coverage, and accordingly filed a declaratory action against its insured seeking a determination of its liability. In determining the identical issue involved in the present case, the court found coverage and held that the company must reimburse the insured for any necessary legal fees and expenses incurred in the declaratory judgment suit. The court in *Upland* concluded that the award of attorney's fees was proper "because the filing of this suit constituted a 'request' by Upland and therefore the company is obligated under its policy to reimburse the insured ... for all reasonable expenses incurred at the company's request." *Id.* at 743; *accord Scott's Liquid Gold–Inc. v. Lexington Ins. Co.*, 97 F.Supp.2d 1226 (D.Colo.2000); *Allstate Ins. Co. v. Robins*, 42 Colo.App. 539, 597 P.2d 1052 (1979); *Security Mutual Casualty Co. v. Luthi*, 303 Minn. 161, 226 N.W.2d 878 (1975). An noted by one court: "[W]e believe that an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract." *Olympic S.S. Co., Inc. v. Centennial Ins. Co.*, 117 Wash.2d 37, 811 P.2d 673, 681 (1991). In light of the applicable provisions in the Policy, the court adopts the same reasoning in this case.

Because the court finds an award of costs and fees is provided for in the Policy, Great West's Motion to Dismiss Schneider's counterclaim is **DENIED.**

### CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Schneider's Motion for Summary Judgment (Doc. #27) is **GRANTED.** That Plaintiff Great West's Motion for Summary Judgment (Doc. #28) is **DENIED.** And that Plaintiff Great West's Motion to Dismiss (Doc. #29) is **DENIED.** LET JUDGMENT BE ENTERED ACCORDINGLY.