Filed 10/1/13; pub. order & mod. 10/28/13 (see end of opn.; reposted as corrected 10/28/13)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| FARMERS INSURANCE EXCHANGE, | B248324 |
| Petitioner, | (Los Angeles County Super. Ct. No. BC477720) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| JOSE LUIS CERVANTES BAUTISTA et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Salvatore Sirna, Judge. Petition granted.

Archer Norris, Limor Lehavi, Mariyetta A. Meyers-Lopez; Greines, Martin, Stein & Richland, Robert A. Olson and Feris M. Greenberger for Petitioner.

No appearance for respondent.

Louis G. Fazzi and Fernando J. Bernheim for Real Parties in Interest.

_____

# INTRODUCTION

Farmers Insurance Exchange (Farmers) petitions this court for a writ of mandate directing the trial court to set aside its order denying Farmers' motion for summary adjudication. Farmers brought this action for declaratory relief and sought summary adjudication on the ground there was no potential for coverage under the homeowners insurance policy it issued to its insureds, real parties in interest Jose Luis Cervantes Bautista and Sara Bautista. We agree with Farmers and grant the petition.

# FACTUAL AND PROCEDURAL BACKGROUND

Farmers issued a homeowners insurance policy for a house in Pomona to Jose Bautista and Lourdes M. Sanchez. Sara Bautista, Jose's wife, was an additional insured under the policy. The policy provided personal liability coverage in the amount of $300,000 per occurrence under Coverage E, which states: "We pay those damages which an insured becomes legally obligated to pay because of bodily injury . . . resulting from an occurrence to which this coverage applies." (Bold omitted.) The policy excludes from Coverage E bodily injury that "7. results from the ownership, maintenance, use, loading or unloading of . . . b. motor vehicles . . . ." (Bold omitted.)

Farmers also issued a vehicle insurance policy covering a 2004 Dodge pickup truck owned by Jose Bautista. The policy provided coverage for bodily injury in the amounts of $30,000 per person and $60,000 per occurrence. Under Coverage A, the policy provided: "We will pay damages for which any insured person is legally liable because of bodily injury to any person . . . arising out of the ownership, maintenance or use of a private passenger car, a utility car, or a utility trailer."[1]

---

[1] "Utility car" includes a pickup truck.

On August 17, 2007 the Bautistas' granddaughter, Valerie Bautista, who was less than two years old, was killed in the driveway of the Bautistas' house when Jose Bautista ran over her with his pickup truck. Sara Bautista routinely allowed the grandchildren to greet Jose at his truck when he came home. She knew that she needed to take extra precautions and supervise the younger grandchildren, including Valerie, when they went to greet Jose, to keep them out of what the Bautistas call the "zone of danger." On the day of the accident, however, Valerie "got out of the house without [Sara] knowing it." She walked in front of Jose's truck, and he ran her over.

On August 14, 2009 Valerie's mother, Kenia Casaya, and her sisters filed an action against the Bautistas and Valerie's father, Jose Luis Bautista, Jr., for wrongful death, negligence, and negligent supervision. Their second amended complaint, which included Valerie's father as a plaintiff rather than a defendant, contained two causes of action, the first for negligence in operating a motor vehicle and the second for general negligence. In the second cause of action, the plaintiffs alleged that "[d]efendant SARA BAUTISTA, so negligently cared for, supervised, watched, managed, controlled and failed to care for, supervise, watch, manage and control decedent Valerie Bautista, who was a[t] the time an infant under the age of two (2) years, as to allow decedent Valerie Bautista to leave Defendant's [*sic*] home unsupervised, where she was run over and killed by Defendant JOSE LUIS BAUTISTA, while in the driveway of Defendants' home." (Underscoring omitted.)

Farmers provided a defense to the Bautistas in the Casaya action. On July 6, 2012 the parties resolved that action by a stipulated judgment in the amount of $360,000. In addition, the plaintiffs signed a covenant not to execute on the judgment in exchange for an assignment of action by the Bautistas.

Farmers then filed this action against the Bautistas for declaratory relief. Farmers sought a declaration that it was not obligated to provide coverage under the Bautistas' homeowners insurance policy with respect to the Casaya action for two reasons: (1) The motor vehicle exclusion in the homeowners policy precluded any potential coverage because all of the claims in the Casaya action arose out of Jose Bautista's use of a motor

3

vehicle; and (2) the homeowners policy excluded coverage for residents of the insureds' household, and Valerie was a resident of the Bautistas' household at the time of the accident. The Bautistas filed a cross-complaint for breach of the implied covenant of good faith and fair dealing and for fraud based on Farmers' failure to pay benefits due under both the homeowners and automobile insurance policies.

Farmers filed a motion for summary adjudication on the complaint and the Bautistas' cross-complaint on the ground there was no potential for coverage and thus no duty to defend or indemnify the Bautistas under the homeowners insurance policy. Relying on *State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94 (*Partridge*) and *National American Ins. Co. v. Coburn* (1989) 209 Cal.App.3d 914 (*Coburn*), Farmers argued that because Jose's use of a vehicle caused Valerie's death, and Sara's negligent supervision of Valerie was not an independent cause of Valerie's death, the motor vehicle exclusion in the homeowners insurance policy precluded coverage under that policy. The Bautistas opposed the motion on the ground that two independent negligent acts, Jose's negligent use of the vehicle and Sara's negligent supervision of the children, caused Valerie's death. The Bautistas argued that under *Partridge* and *State Farm Fire & Cas. Co. v. Kohl* (1982) 131 Cal.App.3d 1031 (*Kohl*) Sara Bautista was independently liable for Valerie's death because she placed Valerie in the "zone of danger," and therefore the Bautistas' homeowners insurance policy provided coverage.

The trial court agreed with the Bautistas and denied Farmers' motion for summary adjudication. The court found that under *Partridge* and *Kohl* "Sara Bautista's negligent supervision [of Valerie] exists independently of the 'use' of a motor vehicle." The court concluded that the motor vehicle exclusion in the homeowners insurance policy did not apply.

Farmers filed this petition for writ of mandate seeking review of the order denying its summary adjudication motion. (Code Civ. Proc., § 437c, subd. (m)(1).) We issued an order to show cause why the writ should not be granted.

4

**DISCUSSION**

A.     *Propriety of Writ Review and Standard of Review*

"'"An order denying a motion for summary adjudication may be reviewed by way of a petition for writ of mandate. [Citation.] Where the trial court's denial of a motion for summary judgment will result in trial on non-actionable claims, a writ of mandate will issue. [Citations.] Likewise, a writ of mandate may issue to prevent trial of nonactionable claims after the erroneous denial of a motion for summary adjudication. [¶] Since a motion for summary judgment or summary adjudication "involves pure matters of law," we review a ruling on the motion de novo to determine whether the moving and opposing papers show a triable issue of material fact. [Citations.] Thus, the appellate court need not defer to the trial court's decision. "'We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale.'" [Citation.]' [Citation.]" (*Arnall v. Superior Court* (2010) 190 Cal.App.4th 360, 364; accord, *Diamond v. Superior Court* (2013) 217 Cal.App.4th 1172, 1182.)

B.     *The Applicable Law*

The leading case in this area of law is *Partridge*. In *Partridge* the defendant was insured under homeowners and automobile policies issued by State Farm. The homeowners policy excluded coverage for injuries arising out of the use of an automobile. The defendant owned a pistol that he had modified by filing the trigger mechanism so that it had "hair trigger action." He was out driving his four-wheel drive Ford Bronco with two friends and using the pistol to shoot jackrabbits through an open window when the car hit a bump and the pistol discharged. The bullet hit and seriously injured one of his friends. (*Partridge*, *supra*, 10 Cal.3d at pp. 96-98.) The trial court found that the defendant's negligence in modifying the pistol was an independent, concurrent proximate cause of the friend's injuries, and therefore his homeowners insurance as well as his automobile insurance provided coverage for the accident. (*Id*. at p. 99.)

5

The court observed that the use of the defendant's vehicle was not the sole cause of the victim's injuries "but was only one of two joint causes of the accident," with the other cause being the modification of the pistol. (*Partridge*, *supra*, 10 Cal.3d at p. 102.) Assuming the connection between the vehicle and the accident was "the type of non-ambiguous causal relationship which would normally bring the exclusionary clause into play, the crucial question presented [was] whether a liability insurance policy provides coverage for an accident caused jointly by an insured risk (the negligent filing of the trigger mechanism) and by an excluded risk (the negligent driving)."[2] (*Ibid*.) The court concluded "that when two such risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy." (*Ibid*.)

The court explained that in issuing the homeowners insurance policy, "State Farm agreed to protect the insured against liability accruing from non-auto-related risks." (*Partridge*, *supra*, 10 Cal.3d at p. 103.) State Farm admitted that had the pistol accidently fired in another setting, any damages caused by the firing of the gun would be covered under the policy. The court concluded that the fact that the gun accidently fired in the car did not preclude coverage. The defendant's "negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries. Under these facts the damages to [the victim] are, under the language of the homeowner's coverage clause,

---

**2**    The court noted that a "different rule of construction applies to exclusionary clauses as distinguished from coverage clauses. Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured [citations], exclusionary clauses are interpreted narrowly against the insurer. [Citations.] These differing canons of construction, both derived from the fundamental principle that all ambiguities in an insurance policy are construed against the insurer-draftsman, mean that in ambiguous situations an insurer might be found liable under both insurance policies. [Citations.]" (*Partridge*, *supra*, 10 Cal.3d at pp. 101-102.) Thus, "the fact that an accident has been found to 'arise out of the use' of a vehicle for purposes of an automobile policy is not necessarily determinative of the question of whether that same accident falls within a similarly worded exclusionary clause of a homeowner's policy. [Citations.]" (*Id*. at p. 102.)

6

'sums which the Insured . . . [became] legally obligated to pay' because of the negligent filing of the trigger mechanism; inasmuch as the liability of the insured arises from his non-auto-related conduct, and exists independently of any 'use' of his car, . . . the homeowner's policy covers that liability." (*Ibid*.)

*Kohl* followed *Partridge*. In *Kohl*, which also involved homeowners and automobile insurance policies, the insured was driving his truck when he struck a motorcyclist who was then thrown to the ground. After the accident, the insured and a bystander dragged the motorcyclist out of the street, causing the motorcyclist additional serious injuries. (*Kohl*, *supra*, 131 Cal.App.3d at pp. 1033, 1034.) The question was whether the collision and the dragging constituted two separate occurrences for purposes of insurance coverage. (*Id*. at pp. 1034-1035.)

The *Kohl* court stated that "[i]n determining whether, under a particular set of circumstances, there was one accident or occurrence, the so-called 'causation' theory is applied. Hence a single uninterrupted course of conduct which gives rise to a number of injuries or incidents of property damage is one 'accident' or 'occurrence.' On the other hand, if the original cause is interrupted or replaced by another cause, then there is more than one 'accident' or 'occurrence.' [Citations.]" (*Kohl*, *supra*, 131 Cal.App.3d at p. 1035, italics omitted.) The court found "that under general tort principles, the additional injury suffered by [the motorcyclist] as a result of the conduct of [the insured and the bystander] in negligently 'dragging' [the motorcyclist] would be covered by the automobile policy, since that subsequent negligence would be a foreseeable consequence of the original accident. From that viewpoint it would follow that the subsequent additional injuries arose out of the 'use' and 'operation' of the motor vehicle [citation] thus invoking the coverage clause of the auto policy." (*Ibid*., italics omitted.)

The *Kohl* court then turned to *Partridge* to determine whether there could nonetheless be coverage under the homeowners policy. "[T]he question narrows as to one of whether the postaccident conduct of [the insured] was so intimately involved with the use of the vehicle and the part of a course of interrupted conduct as to require the finding that it 'arose' out of such use for the purposes of the exclusionary clause or, on

7

the other hand, was independent nonvehicular conduct which replaced or concurred with the vehicle use as a cause of the additional injury." (*Kohl*, *supra*, 131 Cal.App.3d at p. 1036.) The court recognized that in contrast to *Partridge*, where "the operation of the vehicle . . . impacted on the existing and continuing antecedent nonvehicular negligence of the insured," in the current case "the nonvehicular conduct of [the insured] impacted on his antecedent vehicular negligence." (*Id*. at p. 1039, italics omitted.) The court nevertheless found *Partridge* "indistinguishable in principle," "controlling," and that "its effect is not altered by the sequential order of the two types of conduct." (*Ibid*.) The insured's act of dragging the motorcyclist "was independent of and unrelated to his use of the vehicle even though his use of the vehicle placed the victim in a position which led to the additional injury." (*Ibid*.) Thus, both the accident and the "dragging" were concurrent proximate causes of the motorcyclist's injuries, and there was coverage under the homeowners policy. (*Id*. at pp. 1033, 1039.)

In *Ohio Casualty Ins. Co. v. Hartford Accident & Indemnity Co.* (1983) 148 Cal.App.3d 641 (*Ohio Casualty*) the court followed *Partridge* and *Kohl*. The insured in *Ohio Casualty* was a parent who took a group of high school teachers and students for an outing on a lake in his boat, and one of the students was injured when she dove off the boat for a swim while the boat was stationary and she was run over by another boat operated by one of the teachers. (*Id*. at p. 643.) The injured student sued the parent for negligent operation of the boat and negligent supervision of the student in giving her permission to dive into the lake. (*Ibid*.) The parent had a yacht policy with one insurer and a homeowners policy, "which excluded coverage for bodily injury arising out of the use or operation of a watercraft," with another insurer. (*Id*. at p. 644.) The yacht insurer provided coverage and a defense to the parent, and then sued the homeowner's insurer for one-half the cost of the indemnity and defense. (*Id*. at pp. 643-644.)

The *Ohio Casualty* court held that the watercraft exclusion in the homeowners policy did not apply because the "only 'use' of the boat was to transport [the injured student and the insured parent] to the scene of the accident," and "[o]nce there, the boat's engine was turned off and it became nothing more than a floating dock or platform."

8

(*Ohio Casualty*, *supra*, 148 Cal.App.3d at p. 646.)  The court stated that the insured's negligent supervision of the injured student "was not in any way dependent on the use of the boat before liability would arise," and that the insured's liability "would be unaffected whether the acts occurred on a boat, a pier, or on the shore."  (*Ibid.*)  The court noted that the insured's "negligent supervision of [the student's] swimming was separate and independent of any use of the excluded watercraft because there were many ways and places such conduct could have given rise to liability without use of the boat, even though in the instant case it was a use of the boat which actually placed the victim in the position which led to the injury."  (*Id.* at p. 648.)

Coburn, however, distinguished *Partridge*.  In *Coburn* the insured had a homeowner's insurance policy with a motor vehicle exclusion.  The insured was preparing for a camping trip by loading a van he had parked in his driveway, while his children were playing with three other children.  The insured had put the van in park but had not set the parking brake.  While the insured was in the house, one of the children moved the shift lever in the unattended van and it rolled backward down the driveway, killing one of the children playing with the insured's children.  (*Coburn*, *supra*, 209 Cal.App.3d at pp. 916-917.)  Relying on *Partridge*, the insured argued that the "alleged negligent supervision of the children was independent of any act excluded by the policy" and therefore covered.  (*Id*. at p. 918.)  The court disagreed, "conclud[ing] the alleged liability of the [insured] does not arise from [his] nonauto-related conduct *and* exist independently of any use of [the] vehicle.  Thus the homeowner's policy does not afford coverage for that alleged liability."  (*Ibid*.)

The *Coburn* court explained that "'in order for *Partridge* to apply, there must be two negligent acts or omissions of the insured, one of which, independently of the excluded cause, renders the insured liable for the resulting injuries.  [Citations.]'  [Citation.]  [¶]  Here, the alleged negligence consisting of the [insured's] failure to properly supervise the children, exposing them to the hazard of a vehicle parked on an incline with its doors open and without its parking brake set, and [the insured's] leaving the vehicle's doors open while it was parked on an incline without setting the parking

9

brake, could not render the [insured] liable for the [child's] death independently of [the insured's] use and loading of the vehicle.  All the alleged negligence arose from the [insured's] auto-related conduct, i.e., the use and loading of the van for the camping trip. It cannot be seriously argued that the parking, leaving open and braking of a vehicle are anything other than aspects of the 'use' of the vehicle.  None of the alleged negligence, including the negligent supervision of the children, exists independently of [the insured's] use and loading of the vehicle.  Under the exclusionary clause the personal liability claim arose out of the use and loading of the van, a motor vehicle operated by the insured . . . ." (*Coburn*, *supra*, 209 Cal.App.3d at pp. 919-920, fn. omitted.)

   *Prince v. United Nat. Ins. Co.* (2006) 142 Cal.App.4th 233 (*Prince*) also distinguished *Partridge* and followed *Coburn*.  In *Prince* the foster mother of two young children left them in her car on a hot day for more than six hours and they died.  (*Id.* at p. 235.)  In finding that the exclusionary clause applied, the court noted that the foster mother's "negligence in leaving the children in the hot vehicle 'simply cannot be dissociated from the use of the vehicle.'  ([*Coburn*], *supra*, 209 Cal.App.3d at pp. 920-921.)  It was her abandonment of them in the vehicle that subjected them to the conditions causing their deaths.  Had she left them on a park bench, in a grocery store, or on a neighbor's porch, they would not have expired from hyperthermia." (*Prince*, *supra*, at p. 245.)


   C.  *Application to This Case*

   The coverage issue in this case turns on whether Jose's negligent operation of his truck and Sara's negligent supervision of the children are dependent or independent concurrent proximate causes of Valerie's fatal injuries.  The difficulty in resolving this issue arises in part from determining how independent a proximate cause has to be in order to avoid the motor vehicle exclusion in the homeowners policy, and in part from the elasticity of the concept of proximate case.  (See *Bridge v. Phoenix Bond & Indem. Co.* (2008) 553 U.S. 639, 654 [128 S.Ct. 2131, 170 L.Ed.2d 1012] [proximate cause "is a flexible concept that does not lend itself to '"a black-letter rule that will dictate the result

10

in every case"""']; *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1181 [proximate cause "is a generic label for 'the judicial tools used to limit a person's responsibility for the consequences of [his or her] acts'"]; *Mays v. Chang* (W.Va. 2003) 579 S.E.2d 561, 565 ["proximate cause is an 'elastic and mystical term that is meaningless unless it is applied to the facts of a particular case'"].) It does not always provide easy answers in close cases like this one.

This case is somewhere between *Partridge*, *Kohl*, and *Ohio Casualty*, on the one hand, and *Coburn* and *Prince*, on the other. We conclude that the nature of the allegations and the undisputed facts in this record, however, bring this case closer to *Coburn* and *Prince* than to *Partridge*, *Kohl*, and *Ohio Casualty*. In *Partridge*, *Kohl*, and *Ohio Casualty*, "'[t]he excluded instrumentality did not play an active role in causing the injury.'" (*Prince*, *supra*, 142 Cal.App.4th at p. 242, quoting from *Ohio Casualty*, *supra*, 148 Cal.App.3d at p. 646.) In such cases, courts have generally found that the motor vehicle or other relevant exclusion does not apply. (See, e.g., *Safeco Ins. Co. of America v. Parks* (2009) 170 Cal.App.4th 992, 998, 1012 [vehicle exclusion in homeowner's policy did not apply where insured was driving victim home, her car got a flat tire, and a friend picked them up; after the friend ejected victim from friend's car, victim started walking along freeway and was struck by a passing vehicle]; *Aetna Casualty & Surety Co. v. Safeco Ins. Co.* (1980) 103 Cal.App.3d 694, 696-697, 700 [vehicle exclusion in homeowners policy did not apply where insured's son accidentally shot passenger in car while "chambering a round" at target practice site]; *Glens Falls Ins. Co. v. Rich* (1975) 49 Cal.App.3d 390, 392, 394-395, 397 [vehicle exclusion in homeowners policy did not apply where insured accidentally shot passenger when he reached for a loaded shotgun under the front seat to shoot a squirrel sitting on a stump]; see also *Taylor v. American Fire & Cas. Co.* (Utah Ct.App. 1996) 925 P.2d 1279, 1284 ["when determining a homeowners' policy exclusion of coverage for damages arising from the use of a motor vehicle, we focus on the instrumentality causing the damages and not the theory of liability alleged in the complaint"].)

In contrast, the excluded instrumentality in *Coburn*, *Prince*, and this case, the motor vehicle, played an active role in causing the injury by rolling over the victim (*Coburn*), heating up on a hot day (*Prince*), and running over the victim (this case). The injury "involved no instrumentality other than the vehicle itself," and "there would have been no accident without the use or operation of" the vehicle. (*Safeco Ins. Co. v. Gilstrap* (1983) 141 Cal.App.3d 524, 530-531; see *State Farm Fire & Casualty Co. v. Salas* (1990) 222 Cal.App.3d 268, 278 ["the 'excluded instrumentality' . . . was not the mere passive situs of negligence divorced from the vehicle's maintenance"].) In such cases, courts have generally found that the motor vehicle or relevant exclusion applies to bar coverage. (See, e.g., *Belmonte v. Employers Ins. Co.* (2000) 83 Cal.App.4th 430, 434 [vehicle exclusion precluded coverage where van negligently driven by insured's niece hit and injured the victim, even though insured was allegedly negligent in allowing his niece to obtain the key]; *Gurrola v. Great Southwest Ins. Co.* (1993) 17 Cal.App.4th 65, 68-69 [vehicle exclusion precluded coverage under comprehensive general liability (CGL) policy where insured's negligently driven rebuilt Bantam Coupe killed passenger in collision, even though the insured was allegedly negligent in welding the vehicle]; *State Farm Fire & Casualty Co. v. Keenan* (1985) 171 Cal.App.3d 1, 22 [aircraft exclusion precluded coverage where airplane "crash involved no instrumentality other than the accident aircraft, and there would have been no crash in the absence of the use or operation of the accident aircraft," even though insureds allegedly were negligent in entrusting the airplane to the pilot]; *Hartford Fire Ins. Co. v. Superior Court* (1983) 142 Cal.App.3d 406, 412, 415 [aircraft exclusion precluded coverage under homeowners policy where insured crashed plane shortly after takeoff killing one passenger and injuring others, even though insured allegedly was negligent in his "'preflight preparation and/or planning'" and in piloting plane while under the influence of alcohol]; *Safeco Ins. Co. v. Gilstrap*, *supra*, 141 Cal.App.3d at p. 530 [vehicle exclusion precluded coverage where insureds' unlicensed son drove motorcycle and injured passenger in collision, even though the insureds allegedly were negligent in entrusting the motorcycle to their son]; *Allstate Ins. Co. v. Jones* (1983) 139 Cal.App.3d 271, 277 [vehicle exclusion precluded

12

coverage under CGL policy where rebar on insured's truck struck and killed driver of the other car in a collision, even though the insured allegedly was negligent in loading and securing the rebar on the truck]; *State Farm Fire & Cas. Co. v. Camara* (1976) 63 Cal.App.3d 48, 53-56 [vehicle exclusion precluded coverage under homeowners policy where insured drove a dune buggy and injured the passenger, even though the insured allegedly was negligent in designing and building the dune buggy]; *State Farm Fire & Cas. Co. v. Estate of Evoniuk* (N.D.Cal. 1988) 681 F.Supp. 662, 664-665 [vehicle exclusion precluded coverage under homeowners policy where insureds' minor son drove motorcycle after drinking alcohol in the presence of his mother, even though the parents allegedly were negligent in supervising their son].)

Moreover, as in *Coburn*, the supervision here was negligent only because it exposed the children to the danger of negligent automobile use. Although the negligent supervision claimed in this case is not as closely "auto-related" as it was in *Coburn*, it is still related enough that it does not constitute an "independent, concurrent proximate cause[] of" Valerie's fatal injuries. (*Partridge*, *supra*, 10 Cal.3d at p. 99; see *Medill v. Westport Ins. Corp.* (2006) 143 Cal.App.4th 819, 835 ["[c]ourts following *Partridge* have made it clear that its holding only applies to 'multiple causes that operated totally independently of one another'"]; *Allstate Ins. Co. v. Jones*, *supra*, 139 Cal.App.3d at p. 277 ["[i]t is clear when reviewing the facts set forth in *Partridge* . . . and *Kohl* that one of the negligent acts which occurred did not depend upon the use of an automobile and, thus, did not fall within the exclusionary clause"].)

It was undisputed that "Sara's alleged negligence is in allowing Valerie to be out of the house in the zone of danger," which was created when Jose came home in his truck. It was undisputed that Sara "needed to take extra precautions for the younger grandchildren, including Valerie," because the "grandchildren would routinely go out to greet Jose at his truck, when he came home." Sara testified that the children were normally excited when their grandfather arrived home, that they waited in anticipation for him to come home, and that "[t]hey would hear him and then they would go out." In addition, it was "kind of normal to be on the lookout for . . . Grandpa coming home to

13

ensure that the younger ones would be safe." As the Bautistas argue in their answer to the petition, "it was foreseeable that if Valerie got out of the house unsupervised, due to her tender years, she could be injured and killed in just the manner which she was." Thus, Sara's alleged negligent supervision consisted of allowing Valerie to become exposed to the specific hazard created by the arrival of Jose in his truck. The undisputed evidence on summary judgment, and the Bautistas' position in this litigation, is not that Sara's negligence allowed the children to be exposed to one of a number of dangers, such as the danger of wandering away and becoming lost, abduction by strangers in the neighborhood, or even collisions with cars driving down the street. To the contrary, the Bautistas claim, and the evidence is undisputed, that Sara's only negligence in this case was to expose the children to the known danger of Jose's use of the truck. None of the alleged negligent supervision "exists independently of [Jose's] use . . . of the vehicle." (*Coburn*, *supra*, 209 Cal.App.3d at p. 920.) As in *Coburn*, "the conduct of [Sara] in negligently supervising the children . . . was an omission separate from the use of the vehicle only in terms of time and it cannot be disassociated from the use of the vehicle itself . . . ." (*Id.* at pp. 920-921.)

Similarly, as in *Prince*, it was Sara's failure to supervise Valerie when she went out to greet Jose as he drove home in his pickup truck that "subjected [Valerie] to the conditions causing [her] death[]." (*Prince*, *supra*, 142 Cal.App.4th at 245.) Had Sara's failure to supervise Valerie occurred at any other time, Valerie would not have been exposed to the risk of Jose's truck arriving home. As the court stated in *Prince*, "'in order for *Partridge* to apply there must be two negligent acts or omissions of the insured, one of which, independently of the excluded cause, renders the insured liable for the resulting injuries.'" (*Id.* at p. 239; see *Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 399 [*Partridge* "should be utilized only in *liability* cases in which true concurrent causes, each originating from an independent act of negligence, simultaneously join together to produce injury"].) Sara's alleged negligent supervision would not have rendered her and Jose liable independently of Jose's driving of his

14

vehicle, and was not a "totally independent[]" cause of Valerie's death.  (*Medill v. Westport Ins. Corp.*, *supra*, 143 Cal.App.4th at p. 835.)[3]

Moreover, as in *Coburn*, where the injury caused by the insured's non-vehicular negligence (failing to supervise children while packing a van parked in his driveway) could only have occurred at the time and in the manner of the vehicular negligence (loading a van in the driveway without setting the parking brake), Sara's non-vehicular negligence (failing to supervise children while Jose drove his truck in the driveway) can only have occurred at the time and place of the vehicular negligence: in the Bautistas' driveway when Jose came home from work.  In contrast, in *Partridge*, the injury caused by the insured's non-vehicular negligence (modifying the gun's trigger mechanism) could have occurred anywhere at any time: on the road, at home, or in a public place. Similarly, in *Kohl*, the injury caused by the insured's non-vehicular negligence (dragging an injured person) could have occurred anywhere at any time: on the asphalt, during a rescue from a burning building, or on a football field.  (But see *Kohl*, *supra*, 131

---

[3]      Cases from other jurisdictions have reached similar conclusions.  (See, e.g., *Bartow v. Homesite Ins. Co., Inc.* (D.N.J. Dec. 29, 2009, No. 09-2061) 2009 WL 5216964 at pp. 6, 8 [automobile exclusion in homeowner's insurance policy applied because negligent supervision by father, who ran over his toddler son with his SUV, was not "a wholly independent, discrete, act . . . that would constitute a dual cause of" the toddler's death, and the father's "failure to monitor the toddler's whereabouts is inextricably tied to [the father's] manipulation of the vehicle"]; *Phoenix Ins. Co. v. Churchwell* (Mass.Ct.App. 2003) 785 N.E.2d 392, 395 ["it would be difficult to separate [the mother's] negligent supervision claim" of failing to place a child, subsequently injured in a car accident, into a proper child restraint seat, from the insured's "operation of her motor vehicle and to hold that [the child's] injuries did not arise out of the operation of a motor vehicle, a risk not covered by the homeowner's policy"]; *Austin Mut. Ins. Co. v. Klande* (Minn.Ct.App. 1997) 563 N.W.2d 282, 283, 284 ["the insureds' alleged negligent supervision of the child [who was injured when a motorcycle in the garage fell on him] was not a divisible concurrent cause of the accident, such as would implicate coverage under insureds' homeowner policy notwithstanding the motor vehicle exclusion," but rather was "so intertwined with and intimately connected to the insureds' ownership and use of the motorcycle it cannot be said that the claim arose independently of the motorized vehicle related cause"].)  As in *Coburn* and *Prince*, the instrumentality of the harm in *Bartow*, *Churchwell*, and *Klande* was a motor vehicle.

15

Cal.App.3d at p. 1041 (dis. opn. of Beach, J.) ["vehicular accident placed plaintiff on the ground, a condition crying for rescue," and although "the rescue may be separable from driving the vehicle . . . the results of both are included in the greater circle of circumstance or condition which is defined as arising from operation of a vehicle"].) Sara's negligent supervision was not "separate and independent" of Jose's negligent automobile use because there was only one way, one place, and one time Sara's negligence could give rise to liability: when Jose arrived home in his truck. (Cf. *Ohio Casualty*, *supra*, 148 Cal.App.3d at p. 648 ["there were many ways and places" the insured's negligent supervision of child could have led to injury independent of use of yacht].)

Therefore, the trial court erred in finding "Sara Bautista's negligent supervision [of Valerie] exists independently of the 'use' of a motor vehicle," and that the motor vehicle exclusion in the homeowners insurance policy did not apply. Her negligence was sufficiently related to Jose's use of the vehicle and "part of a course of uninterrupted conduct" that it fell within the motor vehicle exclusion. (*Kohl*, *supra*, 131 Cal.App.3d at p. 1036.) Farmers had no liability under the homeowners insurance policy as a matter of law and was entitled to summary adjudication on its complaint and the Bautistas' cross-complaint that it had no duty to indemnify or defend the Bautistas in the Casaya action. (See *County of Los Angeles v. Superior Court* (2009) 181 Cal.App.4th 218, 226.) We therefore order the trial court to grant Farmer's motion for summary adjudication. (*Arnall v. Superior Court*, *supra*, 190 Cal.App.4th at p. 374; see *Choate v. Celite Corp.* (2013) 215 Cal.App.4th 1460, 1468.)

16

**DISPOSITION**

Let a peremptory writ of mandate issue directing the trial court to vacate its order denying Farmers' motion for summary adjudication and to issue a new order granting Farmers' motion for summary adjudication that it had no duty to defend or indemnify the Bautistas under the homeowners insurance policy. Farmers is to recover its costs.

SEGAL, J.[*]

We concur:

PERLUSS, P. J.

ZELON, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| FARMERS INSURANCE EXCHANGE, | B248324 |
| Petitioner, | (Los Angeles County Super. Ct. No. BC477720) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | ORDER MODIFYING OPINION AND DENYING REHEARING, CERTIFYING OPINION FOR PUBLICATION; |
| Respondent; | NO CHANGE IN JUDGMENT |
| JOSE LUIS CERVANTES BAUTISTA et al., | |
| Real Parties in Interest. | |

THE COURT:

It is ordered that the opinion filed herein on October 1, 2013, be modified as follows:

1. On page 10, line 6 of section C, the word "case" is changed to "cause" so the sentence reads:

> The difficulty in resolving this issue arises in part from determining how independent a proximate cause has to be in order to avoid the motor vehicle exclusion in the homeowners policy, and in part from the elasticity of the concept of proximate cause.

2. On page 16, between lines 10 and 11, insert the following paragraphs:

Finally, the Bautistas argue that Sara's "negligence [arose] from non-auto related conduct and exists independently of <u>her</u> use of an insured automobile," and that the "exclusion clause does not offer any guidance because it is ambiguous whether the 'use' of a motor vehicle must relate to an insured or some other." The Bautistas appear to be arguing that the exclusion contains an ambiguity regarding who must be driving the motor vehicle, and that because of this ambiguity the exclusion applies only when the negligent supervision and the negligent use of the motor vehicle are by the "same insured."

The language of the motor vehicle exclusion, however, is not ambiguous. The court in *Belmonte v. Employers Ins. Co.* (2000) 83 Cal.App.4th 430 held that the language of this exclusion is unambiguous and is not "limited to use by the named insured." (*Id.* at p. 434; see Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2011) ¶ 7:330a, p. 7A-128.3 ["the exclusion bars coverage for claims arising out of the 'use' of an automobile even if the insured was not the party using it"].) Moreover, where an exclusion in an insurance policy "discloses no suggestion that it relates exclusively to [specific types of] claims" but "its language is broad and unqualified," courts will not interpret it to apply only to those specific types of claims. (*Total Call Internat., Inc. v. Peerless Ins. Co.* (2010) 181 Cal.App.4th 161, 173; see, e.g., *Sabella v. Wisler* (1963) 59 Cal.2d 21, 31 [exclusion for "'settling,' without use of qualifying adjectives such as 'normal' or 'usual'" "indicate[d] an intent to exclude any and all loss caused by settling"]; *Murray v. State Farm Fire & Casualty Co.* (1990) 219 Cal.App.3d 58, 62-64 [court would not read unqualified exclusion for wear and tear and deterioration to include only "normal" or "usual" deterioration].) The language of the motor vehicle exclusion here is broad and unqualified; it does not apply only to injury resulting from a particular insured's, or even any insured's, use of a motor vehicle. Finally, had the parties intended the exclusion to apply only to injuries resulting from an insured's or a particular insured's "ownership, maintenance, use, loading or unloading" of a motor vehicle, the policy would say so, as it does in other exclusions. For example, the policy excludes injury that "arises from or during the course of **business** pursuits of an **insured**" (exclusion 1), that is "caused intentionally by or at the direction of an **insured**" (exclusion 3a), or that "results from an **insured** transmitting a communicable (including sexually transmitted)

19

disease" (exclusion 5).  Thus, the policy distinguishes between exclusions that apply to conduct by an insured and those that apply to conduct by anyone, and the motor vehicle exclusion applies to motor vehicle conduct by anyone, insured or non-insured.  Application of the exclusion does not require that the negligent supervision and the negligent use of the motor vehicle be by the "same insured."

There is no change in the judgment.  Real parties in interest's petition for rehearing is denied.

The opinion in the above-entitled matter filed on October 1, 2013, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____          _____          _____
PERLUSS, P. J.                    ZELON, J.                           SEGAL, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.