Filed 4/30/14  Foreman v. Farmers Ins. Exchange CA1/2
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| LAUREL FOREMAN et al., | |
|      Plaintiffs and Appellants, | A137333 |
| v. | |
| FARMERS INSURANCE EXCHANGE et al., | (Contra Costa County Super. Ct. No. C11-01258) |
|      Defendants and Respondents. | |

Charles Pierce (Pierce) was sitting in the passenger seat in the vehicle his 15-year-old granddaughter Mikayla Ririe (Mikayla) was driving.  Pierce dropped his soda, distracting Mikayla, who struck and killed Ralph Cherry, Jr. (Ralph).[1]  An arbitrator awarded Ralph's surviving parents, Laurel Foreman and Ralph Cherry, Sr. (appellants), a judgment for damages against Pierce and Mikayla.  Following partial satisfaction of the judgment, appellants filed this action against Fire Insurance Exchange (FIE), which had issued a homeowner's insurance policy to Pierce's wife.  The trial court granted FIE's motion for summary judgment, based on an exclusion excluding coverage for injury resulting from automobile related accidents.  Appellants appeal, arguing that the exclusionary clause does not apply to the circumstances here.  We disagree, and we affirm.

---

[1] For consistency with the pleadings and briefing below, we identify some parties by their last name and some by their first.  No disrespect is intended.

1

## FACTS

### The Accident

On August 19, 2008, Mikayla, Pierce's 15-year-old granddaughter who had only a learner's permit, was driving her father's 1994 GMC Jimmy. Mikayla needed a responsible licensed driver to be with her, and Pierce accompanied her, sitting in the front passenger seat of the vehicle. Pierce, who suffered from Parkinson's disease, dropped a can of soda on the floor of the vehicle, startling Mikayla. As Pierce reached to the floor to pick up the can, Mikayla also looked down, causing the vehicle to drift onto the sidewalk and kill Ralph, a 23-year-old who was riding his bicycle.

### The Underlying Action

Appellants sued Pierce, Mikayla, and her mother for negligence, including negligent entrustment of the vehicle and failure to supervise its use. The parties agreed to submit the action to arbitration, which was held before the Honorable Michael Ballachey, retired judge of the superior court. Judge Ballachey entered judgment in favor of appellants in the total amount of $756,896.33. The verdict was apportioned equally between the two appellants, $378,448.16 to each. Liability was apportioned 75 percent to Pierce and 25 percent to Mikayla.

Judge Ballachey's award included a number of findings, including these:

"F. Mr. Pierce was in the car with Ms. Ririe as the responsible licensed driver. His duty was to the public, including Mr. Cherry, Jr., to direct and control Ms. Ririe's driving to avoid precisely the kind of accident occurring here. He was not in the vehicle as a mere passenger.

"G. Mr. Pierce's duty—to the public as well as Ms. Ririe—was to supervise and control her driving to assure safe driving behavior. He failed to perform that duty.

"H. Taking an open soda can in the car was inappropriate and inconsistent with Mr. Pierce's responsibilities. Knowing of his Parkinson's condition, and given that he was no longer driving, Mr. Pierce was not a strong candidate for the duties he undertook in the first place—duties which carried a near fiduciary duty to the public. Adding the open can of soda merely exacerbated an already unstable condition.

2

"I. Dropping the soda can, foreseeable in the circumstances, was a negligent act that contributed directly to the accident. Had he not brought the can; had he not dropped the can; it seems likely that the accident might well never have happened.

"J. Given the high level of duty and responsibility borne by Mr. Pierce, it is the finding of the Arbitrator that his responsibility is fixed at 75%."

Nationwide Insurance Company, the automobile insurer for Mikayla's parents, paid the $25,000 policy limits in partial satisfaction of the judgment against Mikayla. Geico Insurance Company, the automobile insurer for Pierce, paid the $100,000 policy limits in partial satisfaction of the judgment entered against him.

### The Lawsuit

Pursuant to Insurance Code section 11580, subdivision (b)(2), and as judgment creditors of Pierce, appellants filed a complaint against three insurance companies, seeking to recover the judgment against Pierce. FIE, which had issued a homeowner's policy to Pierce's wife, effective December 29, 2007 to December 29, 2008, answered, and the other two insurers were dismissed.

As pertinent to the issue here, FIE's policy excluded coverage for bodily injury resulting from the ownership, maintenance, use, loading or unloading of a motor vehicle (the "automobile exclusion"). The specific language was as follows:

"**SECTION II—EXCLUSIONS**

"**Applying To Coverage E and F—Personal Liability and Medical Payments to Others**

"We do not cover **bodily injury, property damage** or personal injury which:
[¶] . . . [¶]

"7. Results from the ownership, maintenance, use, loading or unloading of:
[¶] . . . [¶]

"b. **motor vehicles**; [¶] . . . [¶]

"Exclusions 7a, b, c, and d do not apply to **bodily injury** to a **residence employee** in the course of employment by an **insured.**

3

"8.  Results from the entrustment of any **aircraft, motor vehicle**, jet skis or jet sleds to any **person**.  Entrustment means the permission you give to any **person** other than you to use any personal **aircraft, motor vehicles**, jet skis, or jet sleds owned or controlled by you."

FIE moved for summary judgment, contending that the accident was excluded from coverage under its policy, based on the automobile exclusion quoted above. Appellants filed their own motion for summary judgment/summary adjudication, and also opposed FIE's motion.

The trial court granted FIE's motion, and entered judgment for it, from which appellants filed a timely appeal.

## DISCUSSION

### Summary Judgment and the Standard of Review

The standard of review following entry of summary judgment is well established. In *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 253-254, we summarized it as follows:

"Code of Civil Procedure section 437c, subdivision (c) provides that summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law.  [Citation.] As applicable here, moving defendants can meet their burden by demonstrating that 'a cause of action has no merit,' which they can do by showing that '[o]ne or more elements of the cause of action cannot be separately established . . . .'  [Citations.]  Once defendants meet this burden, the burden shifts to plaintiff to show the existence of a triable issue of material fact. [Citation.]

"On appeal '[w]e review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citations.]'  [Citation.]  Put another way, we exercise our independent judgment, and decide whether undisputed facts have been established that negate plaintiff's claims.  [Citation.]  As we put it in *Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 320:  '[W]e exercise an

4

independent review to determine if the defendant moving for summary judgment met its burden of establishing a complete defense or of negating each of the plaintiff's theories and establishing that the action was without merit.' "

The case presents a single question: whether the homeowners policy issued by FIE excluded the damages resulting from the accident. FIE contends that coverage is excluded, since the injuries necessarily resulted from the use of the automobile. Appellants claim coverage is not excluded, because Pierce did not use the vehicle and the accident was the result of both an insured risk and an excluded risk, that the negligent use of the automobile and the spilling of the soda were independent, concurrent proximate causes of Ralph's death. Under such circumstances, appellants argue, the exclusion does not apply, an argument based primarily on *State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94 (*Partridge*).

The insured in *Partridge* had filed the trigger mechanism of his .357 Magnum pistol to lighten the trigger pull. One evening, the insured was driving in the countryside on a rabbit hunt with two friends beside him and, using his modified pistol, was shooting out the window of the moving vehicle. Spotting a jackrabbit run across the road, and wanting to keep it within sight, the insured drove off the paved road and onto rough terrain. The vehicle hit a bump, and the pistol discharged a bullet, seriously injuring one of the passengers. The injured passenger sued for damages. (*Partridge, supra,* 10 Cal.3d at p. 98.)

The insured had both an automobile and a homeowners policy with the same insurer, and the insurer brought a declaratory relief action requesting a determination as to which one, or both, of its policies afforded coverage. The trial court concluded both policies applied. The Supreme Court affirmed, but not on any basis helpful to appellants. The Supreme Court first held that while coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured, exclusionary clauses are interpreted narrowly against the insurer. (*Partridge, supra,* 10 Cal.3d at pp. 101-102.) But even apart from this rule of construction, the insured's use of the car was only one of two joint causes of the accident, and the other concurrent cause—the insured's modification of the

5

gun—was a risk covered by the homeowners policy, liability for which existed independently of the use of the automobile. (*Id*. at p. 102.) In sum, *Partridge* held that coverage is available "whenever an insured risk constitutes simply a concurrent proximate cause of the injuries." (*Id.* at p. 105.)

*Partridge* is not applicable here, as numerous cases since *Partridge* have concluded, holding *Partridge* inapplicable to the setting before it—cases we find persuasive.

*Prince v. United Nat. Ins. Co.* (2006) 142 Cal.App.4th 233 (*Prince*) is illustrative. There, Smoot, a foster parent, left her two foster children in an overheated SUV for several hours on a hot day. The children died. Their biological parents filed a wrongful death action against Smoot and others, including Trinity, the agency which licensed the foster parents. The actions settled, and the parents then filed a declaratory relief action against United National, the liability insurer of Trinity. United National's demurrer was sustained without leave to amend, based on a policy exclusion similar to that here. The Court of Appeal affirmed, holding as follows: "Whether the test to be applied is predominating cause/substantial factor or minimal causal connection makes no difference here. The relationship between the use of the automobile and the injury was sufficient to trigger the exclusion. Dakota and Nehemaiha Prince-Smith died when they were left in an overheated vehicle. Unlike rape or assault, which can happen anywhere, the type of rapid onset hyperthermia suffered by the children is particularly likely to occur in a motor vehicle. The combination of a small confined glass and metal space and a warm sunny day creates an environment in which heat is trapped and hazardous temperatures develop within a startlingly brief period of time. Thus, the vehicle, far from being merely the situs of the injury, was itself 'the instrumentality' of it. [Citation.] Moreover, the use of the vehicle was anything but 'incidental' to the injuries suffered by its occupants. It was a predominating cause/substantial factor in their deaths. [¶] . . . [¶] In short, Smoot's negligence in leaving the children in the hot vehicle 'simply cannot be dissociated from the use of the vehicle.' [Citation.] It was her abandonment of them in the vehicle that subjected them to the conditions causing their deaths. Had she left them on a park bench,

6

in a grocery store, or on a neighbor's porch, they would not have expired from hyperthermia." (*Id.* at pp. 244–245.)

*National Indemnity Co. v. Farmers Home Mutual Ins. Co.* (1979) 95 Cal.App.3d 102 is similar. The insured there was babysitting her nephew. After the insured parked her car, the nephew ran out of the car and halfway across the street, where he was hit by a passing car. The insured had automobile insurance from National and liability insurance from Farmers, and National sued Farmers for declaratory relief. The Court of Appeal found for Farmers, holding that the exclusionary clause applied, as follows: "Here the act of the insured which gives rise to liability, if such liability is ultimately established, is her negligent failure to supervise and control the child during the unloading of the vehicle at a place well removed from the insured's premises. That is what the trial court found and that is what the stipulated facts establish. [¶] There is a complete absence of conduct on the part of the insured which is independent of and unrelated to the 'use' of the vehicle. The conduct of the insured which contributed to the injury simply cannot be dissociated from the use of the vehicle. Nor did the injury, insofar as the insured is concerned, involve an instrumentality other than the vehicle itself. [Citation.] This being so, the exclusion clause in the Farmers homeowners policy must be given effect." (*Id.* at pp.108-109.)

In *Belmonte v. Employers Ins. Co.* (2000) 83 Cal.App.4th 430, the plaintiff's niece entered his office and without his permission took the keys to his van and drove it around the parking lot with her friend. While at the wheel, she lost control of the van and hit her friend, causing serious injury. Plaintiff, who owned and operated a store covered by a general liability policy that included a standard exclusionary clause, was sued, and requested his insurers to defend him in the suit. They refused, citing the automobile exclusion, and plaintiff sued them. The Court of Appeal affirmed the summary judgment for the insurers, holding that the exclusion applied. Since access to the keys alone did not suffice to cause the injury and establish liability, it was not a proximate cause separate from the use of the van. (*Id.* at p. 434.)

The most recent case to address the issue reached the same result. That case is *Farmers Ins. Exchange v. Superior Court* (2013) 220 Cal.App.4th 1199, where a two-year-old girl was killed when she was accidentally run over by her grandfather in the driveway of his home. The mother and two sisters of the child filed a wrongful death action, alleging that the grandfather was negligent in operation of his pickup truck. A second cause of action alleged that the grandmother was negligent in the supervision of the child while on her premises. (*Id.* at p. 1202.)

The grandparents' homeowners insurer filed an action against them, seeking a declaration that it was not obligated to provide coverage under their policy, based upon a policy exclusion for injuries arising from the ownership, maintenance or use of a motor vehicle. The insurer moved for summary adjudication, which the trial court denied, finding that under *Partridge* the grandmother's negligent supervision existed independently of the motor vehicle and therefore the exclusion did not apply. The Court of Appeal issued a writ of mandate directing the trial court to grant the motion, holding that the insurer had no liability as a matter of law. (*Id.* at pp. 1203, 1214.) Reaching that conclusion, the Court of Appeal made several observations pertinent here, including these:

"[T]he excluded instrumentality in [*National American Ins. Co. v. Coburn* (1989) 209 Cal.App.3d 914], *Prince*, and this case, the motor vehicle, played an active role in causing the injury by rolling over the victim (*Coburn*), heating up on a hot day (*Prince*), and running over the victim (this case). The injury 'involved no instrumentality other than the vehicle itself,' and 'there would have been no accident without the use or operation of' the vehicle. (*Safeco Ins. Co. v. Gilstrap* (1983) 141 Cal.App.3d 524, 530." (*Farmers Ins. Exchange v. Superior Court, supra,* 220 Cal.App.4th at p. 1209.)

"Moreover, as in *Coburn*, the supervision here was negligent only because it exposed the children to the danger of negligent automobile use. Although the negligent supervision claimed in this case is not as closely "auto-related" as it was in *Coburn*, it is still related enough that it does not constitute an 'independent, concurrent proximate cause[] of' Valerie's fatal injuries. (*Partridge, supra,* 10 Cal.3d at p. 99; see *Medill v.*

8

*Westport Ins. Corp.* (2006) 143 Cal.App.4th 819, 835 ['[c]ourts following *Partridge* have made it clear that its holding only applies to "multiple causes that operated totally independently of one another" '] . . . ." (*Farmers Ins. Exchange v. Superior Court, supra,* 220 Cal.App.4th at p. 1210.)

"Similarly, as in *Prince*, it was Sara's failure to supervise Valerie when she went out to greet Jose as he drove home in his pickup truck that 'subjected [Valerie] to the conditions causing [her] death[].' (*Prince, supra,* 142 Cal.App.4th at p. 245.) Had Sara's failure to supervise Valerie occurred at any other time, Valerie would not have been exposed to the risk of Jose's truck arriving home. As the court stated in *Prince*, ' "in order for *Partridge* to apply there must be two negligent acts or omissions of the insured, one of which, independently of the excluded cause, renders the insured liable for the resulting injuries." ' (*Id.* at p. 239; [citations].)" (*Farmers Ins. Exchange v. Superior Court, supra,* 220 Cal.App.4th at p. 1211.)

"Finally, the Bautistas argue that Sara's 'negligence [arose] from non-auto related conduct and exists independently of *her* use of an insured automobile,' and that the 'exclusion clause does not offer any guidance because it is ambiguous whether the "use" of a motor vehicle must relate to an insured or some other.' The Bautistas appear to be arguing that the exclusion contains an ambiguity regarding who must be driving the motor vehicle, and that because of this ambiguity the exclusion applies only when the negligent supervision and the negligent use of the motor vehicle are by the 'same insured.' [¶] The language of the motor vehicle exclusion, however, is not ambiguous. The court in *Belmonte v. Employers Ins. Co.* (2000) 83 Cal.App.4th 430 held that the language of this exclusion is unambiguous and is not 'limited to use by the named insured.' (*Id.* at p. 434; see Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group [2013]) ¶ 7:330a, p. 7A-128.3 ['the exclusion bars coverage for claims arising out of the 'use' of an automobile even if the insured was not the party using it . . . .'].)" (*Farmers Ins. Exchange v. Superior Court, supra,* 220 Cal.App.4th at p. 1213.)

The essence of these holdings is that there is no coverage under a homeowners policy for injuries which could not have occurred but for the operation or use of a motor

9

vehicle. As one court point blank put it: "The liability must arise from nonvehicular conduct and must exist independently of the use or ownership of the vehicle." (*Gurrola v. Great Southwest Ins. Co.* (1993) 17 Cal.App.4th 65, 69.) To the same effect, see *Safeco Ins. Co. v. Gilstrap, supra,* 141 Cal.App.3d at p. 527 [discussing *Partridge* and subsequent cases, and holding exclusion precluded coverage of claim of negligent entrustment where injury involved no instrumentality other than vehicle itself and there would have been no accident without use or operation of vehicle]; cf. *Hartford Fire Ins. Co. v. Superior Court* (1983) 142 Cal.App.3d 406, 413 [applying same principles to aircraft exclusion].) The above authorities demonstrate that the summary judgment here was proper, as Pierce's liability did not exist independently of the vehicle.

The above authorities also demonstrate that the two other cases cited by appellants in their opening brief—*Essex Ins. Co. v. City of Bakersfield* (2007) 154 Cal.App.4th 696 (*Essex*) and *Safeco Ins. Co. of America v. Parks* (2009) 170 Cal.App.4th 992 (*Parks*)— are not supportive.

*Essex* involved a claim against the city based on an alleged dangerous condition of public property on which a vehicular accident occurred. The trial court held that the insurer did not have to defend the city under a commercial liability policy it had issued. The accident did not occur on the premises of the event, and the drivers of the vehicles involved in the accident were not employees or agents of the city. (*Essex, supra,* 154 Cal.App.4th at p. 708.)

The Court of Appeal reversed, concluding that the exclusion did not plainly and clearly exclude coverage for bodily injures arising from auto accidents where the insured had no connection to the automobiles involved. Moreover, the court held that the exclusion should not apply in a situation where the insured could not get separate coverage for the risk, noting that no automobile policy would cover liability arising from an automobile accident where the insured had no connection to the automobile involved in the accident. (*Essex, supra,* 154 Cal.App.4th at p. 710.)

10

Here, by contrast, Pierce not only could get automobile insurance to cover the accident, it is undisputed he had such insurance, the policy limits of which were paid to appellants. *Essex* is clearly distinguishable, as is *Parks.*

Parks was injured when he was put out of a vehicle during an argument with his friends, and was struck by a passing motorist while walking on Highway 101. He sued, and one of the friends, a minor, tendered her defense to the insurer under a homeowners policy issued to her mother's boyfriend. As relevant to the issue here, the Court of Appeal affirmed that the automobile exclusion did not apply, because Parks had walked over a mile before the accident. Citing and discussing numerous cases, the Court of Appeal concluded as follows: "Miller's negligent driving of Parks's car certainly set in motion the events that culminated in his injuries. But it was not the 'predominating cause' or a substantial factor in causing those injuries. The subsequent negligence of Cooney, Rivera and Miller in removing Parks from Cooney's car and leaving him on the side of the highway was an independent, concurrent cause of his injuries that is connected to, but not dependent on Miller's use of Parks's car. [Citation.] Her liability for that conduct would exist regardless of whether she used a car to transport Parks to the place where they were picked up by Cooney or to the place where Parks was later abandoned." (*Safeco Ins. Co. of America v. Parks, supra,* 170 Cal.App.4th at p. 1012.)

Likewise distinguishable is *Ohio Casualty Ins. Co. v. Hartford Accident & Indemnity Co.* (1983) 148 Cal.App.3d 641, a case first cited in appellants' reply brief. Passing over that such reliance is improper (see *In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1477), the case has no applicability here, the court holding that the exclusion in a homeowners policy for watercraft use did not apply to injuries suffered by a boat passenger who dove into the water from the anchored boat and was injured by another passing boat as she surfaced. In the words of the Court of Appeal, the homeowner's "negligence was not an act of omission in failing to supervise some aspect of the operation of the boat, such as loading or unloading, but was an act of commission in permitting [the passenger] to go swimming when it was unsafe to do so. . . . [T]he negligent supervision of [the passenger's] swimming activities did not in itself constitute

11

a use of the boat. . . . [T]he mere fact [the homeowner's] negligent act is *connected* to the use of the boat does not mean it is *dependent* on the use of the boat." (*Ohio Casualty Ins. Co. v. Hartford Accident & Indemnity Co., supra,* 148 Cal.App.3d at p. 647.)

Here, Pierce's act which gives rise to liability is not independent and unrelated to the use of the vehicle.  The exclusionary clause must be given effect.

**DISPOSITION**

The judgment is affirmed.


_____
Richman, J.


We concur:


_____
Haerle, Acting P.J.


_____
Brick, J.[*]

_____

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.